THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* THE METROPOLITAN SURETY COMPANY, Defendant.

In the Matter of THE H. B. SMITH COMPANY, Appellant, *v.* JOHN F. YAWGER, as Receiver of the METROPOLITAN SURETY COMPANY, Respondent.

Bonds — liability of surety company upon bond given for contractor agreeing to erect buildings for United States government under United States statute authorizing contract and requiring contractor to give bond to secure payment for labor and materials furnished for buildings — surety company not liable unless claim has been put in judgment as required by the statute.

1. An act of Congress, which authorizes or creates a new cause of action and prescribes the limitations thereof and of its enforcement, makes those limitations conditions of the liability itself. Such an act is not a statute of limitations, and a compliance with the conditions which it prescribes is indispensable to the enforcement of the right it creates.

2. The defendant surety company became surety for a construction company which contracted with the United States government to construct certain buildings at West Point. The statute authorizing the contract provided for a bond from the contractor with the obligation that it would promptly make payments to all persons supplying it with labor and materials, and contained the following conditions of recovery thereon: (a) That the claimants be made parties to an action brought by the United States upon the bond, by intervention or directly, in order that all rights and claims might be adjudicated; (b) that during a specified period from the completion and final settlement of the contract, in case the United States had not brought an action, a claimant should bring suit in

its name in the Federal court; (c) that only one action should ever be brought upon the bond, in which the requisite notice should be given to all known creditors and all creditors should be permitted to file their claims in such action and be made parties thereto within one year from the completion of the work under the contract, and not later. Under this statute a judgment in an action prescribed by and conducted in accordance with the requirements of the statute could alone render the bond complete and absolute. The means of enforcement define both the right of the claimant and the liability of the surety which it was the intention of Congress to create, and no recovery can be had upon the bond until the conditions imposed by the statute have been complied with.

*People* v. *Metropolitan Surety Co.*, 159 App. Div. 929, affirmed.

(Submitted February 25, 1914; decided April 14, 1914.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 25, 1913, which reversed an order of Special Term confirming the report of a referee and allowing against the receiver of the Metropolitan Surety Company the claim of the appellant for the sum of $1,631.40.

The Appellate Division certified the two questions:

1. At the date of the insolvency of the defendant, the Metropolitan Surety Company, January 6, 1909, had the claim of the claimant, the H. B. Smith Company, so far ripened as to entitle the claimant to any share in the distribution of the assets in the hands of the receiver?

2. If said claim had so ripened, must the defendant's liability thereon first be determined in the manner prescribed by the United States statute under which the bond on which said claim is based was given, that is, by a suit brought in the Circuit Court of the United States for the Southern District of New York?

The questions spring from the following facts: August 26, 1905, the Church Construction Company, a corporation, contracted in writing with the United States to construct named buildings at West Point, New York. The

statute (Act of February 24, 1905, ch. 778; 32 U. S. Stat. L. 811) required .that the company before commencing the work execute "the usual penal bond, with good and sufficient sureties, with the additional obligation that" it would "promptly make payments to all persons supplying" it with labor and materials in the prosecution of the work, and provided: "Any person, company or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of· said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed *pro rata* among said intervenors. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sure-

ties, and to prosecute the same to final judgment and execution; *Provided,* That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later; *And Provided further,* that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. If the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor *pro rata* of the amount of the recovery. The surety on said bond may pay into court, for distribution among said claimants and creditors, the full amount of the sureties' liability, to wit, the penalty named in the bond, less any amount which said surety may have had to pay to the United States by reason of the execution of said bond, and upon so doing the surety will be relieved from further liability; *Provided further,* That in all suits instituted under the provisions of this Act such personal notice of the pendency of such suits, informing them of their rights to intervene as the Court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the state or town where the contract is being performed, for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

In obedience to the statute the company as principal and the Metropolitan Surety Company as surety executed a bond to the United States in the penal sum of $134,000, reciting the contract between the company and the United States and containing the condition, in effect, that it should be void if the company performed in full

the contract and "shall promptly make full payments to all persons supplying it labor or materials in the prosecution of the work provided for in said contract." The contract for the work was completed and finally settled September 28, 1908. The claimant, The H. B. Smith Company, had furnished for it under a contract between claimant and the Church Construction Company apparatus of the agreed price of $3,279.44 of which $1,631.40 has not been paid and constitutes the present claim. A permanent receiver of the Church Construction Company was appointed May 18, 1908, on the ground of insolvency. The action of the People of the State of New York against the Metropolitan Surety Company was commenced on January 6, 1909, and on January 30, 1909, judgment was duly entered therein dissolving the surety company and directing a just distribution of the assets among its stockholders and fair and honest creditors and appointing Yawger, the respondent, permanent receiver, and enjoining and restraining all creditors of the surety company from commencing any action or proceeding against said surety company or receiver without first obtaining leave of the court. The H. B. Smith Company filed the claim on May 13, 1909, with the permanent receiver, who rejected it. The allowance of it by the referee to whom it was referred was confirmed by the Special Term and reversed by the Appellate Division. No suit on the bond has been instituted by the United States or by any creditor of the Church Construction Company in the Circuit Court of the United States for the Southern District of New York, in which district said contract was performed and executed. No payment has been made to the United States by the surety company as surety on said bond, nor has any claim been made by the United States against the surety company as such surety for any amount. The claims of creditors filed with the receiver herein against the surety company as surety on said bond amount in the

aggregate to less than the sum of $134,000, the amount of the liability of the surety company on said bond.

*Tallmadge W. Foster* for appellant.   At the date of the commencement of this action for the dissolution of the Metropolitan Surety Company, January 6, 1909, the H. B. Smith Company had a valid claim against the Metropolitan Surety Company as surety on the bond in question for the amount claimed, which had so far ripened as to entitle the claimant to a share in the distribution of the assets in the hands of the receiver.   (*U. S. F. & G. Co.* v. *United States,* 209 U. S. 306.)   The Supreme Court has jurisdiction to pass upon and allow the claim of the H. B. Smith Company.   (1 Pom. Eq. Juris. [3d ed.] § 181; *Porter* v. *Sabin,* 149 U. S. 473; *People* v. *A. L. & T. Co.,* 150 N. Y. 117; *Head* v. *Stevens,* 19 Wend. 411; *Cross* v. *Huntley,* 13 Wend. 385; *Taylor* v. *Guinan,* 67 Misc. Rep. 262.)   The claim of the H. B. Smith Company being, therefore, a just and valid claim, fully matured at the date of the commencement of this action, capable at that time of being put into judgment in an action which the United States could then have brought on this bond, the receiver had the power to allow it and should have done so.   (Van Santvoord's Equity Practice [2d ed.], 427; *Attorney-General* v. *Life & Fire Ins. Co.,* 4 Paige, 224.)

*Edward R. Finch* and *Francis X. Brosnan* for respondent.   The claimant's cause of action rests upon and is created by the Federal act of February 24, 1905. (*Stitzer* v. *United States,* 182 Fed. Rep. 513; *Sears & Son* v. *Mahoney,* 66 Fed. Rep. 860; *Lyman* v. *R. T. Ins. Co.,* 37 App. Div. 234; *Crawford* v. *Ozark Ins. Co.,* 134 S. W. Rep. 951; *Lowe* v. *City of Guthrie,* 44 Pac. Rep. 198; *State* v. *Wotring,* 56 W. Va. 394; *Ledck* v. *Brown,* 58 Ill. App. 379; *U. S. ex rel. Bell* v. *Empire Surety Co.,* 114 App. Div. 755; *U. S. ex rel. Hill* v. *American Surety Co.,* 200 U. S. 197; *United States* v. *U. S. F. &*

*G. Co.,* 171 Fed. Rep. 247; *American Surety Co.* v. *Lawrenceville Cement Co.,* 95 Fed. Rep. 25.) The liability of the surety in any cause of action arising on such a bond as the one on which the claim of the H. B. Smith Company is made must be determined in the forum prescribed by the Federal statute referred to above; that is to say, the former Circuit (now District) Court of the United States where the work was to be performed and not elsewhere. (*Loomis* v. *Lehigh Valley R. R. Co.,* 208 N. Y. 312; *U. S. F. & G. Co.* v. *United States,* 209 U. S. 306; *Heidritter* v. *E. O. Co.,* 112 U. S. 294; *Gay, Hardie & Co.* v. *B. C. & I. Co.,* 94 Ala. 303; *Barton* v. *Barbour,* 104 U. S. 126; *James* v. *James Cement Co.,* 8 N. Y. S. R. 490; *Stitzer* v. *United States,* 182 Fed. Rep. 513; *Matter of Moore,* 209 U. S. 490; *Ex parte Wisner,* 203 U. S. 449; *Davidson Brothers Marble Co.* v. *United States,* 213 U. S. 10.) At the time of the insolvency of the defendant the claim of the claimant had not so far ripened as to entitle the claimant to any share in the distribution of its assets. (*People* v. *Met. Surety Co.,* 205 N. Y. 135.) The claimant's cause of action could not, in any event, arise until six months after the completion and final settlement of the contract, according to the Federal statute. (*U. S. ex rel. Hill* v. *American Surety Co.,* 200 U. S. 197; *Stitzer* v. *United States,* 182 Fed. Rep. 513; *United States* v. *Winkler,* 162 Fed. Rep. 397.) There was no cause of action on January 6, 1909, because a recovery by a materialman on said bond necessitated a suit in the United States Circuit Court brought to a successful termination. (*People* v. *Met. Surety Co.,* 205 N. Y. 135; *People* v. *American L. & T. Co.,* 172 N. Y. 371.)

COLLIN, J. The statute requiring and prescribing the substance and conditions of the bond is as perfectly binding on the principal and surety as if it had been set forth in the bond in its very words. (*McCracken* v. *Hayward,* 2 How. [U. S.] 608.) The bond, conforming to the stat-

8

ute, imposed only such obligations as the statute permits. The statute is in a sense a recognition by Congress of the inability of persons supplying contractors for public works with labor and materials to take liens upon the public property of the United States and a substitute for a mechanic's lien law. (*United States* v. *Ansonia Brass, etc., Co.,* 218 U. S. 452; *Title Guaranty & Trust Co.* v. *Crane Co.,* 219 U. S. 24.)

It should be noticed, in order that there may be a true understanding of the relevant decisions, that the statute takes up the entire subject covered by a prior statute (Act of August 13, 1894, ch. 280; 28 U. S. Stat. L. 278), and, therefore, is to be treated as a substitute act.

Obviously the entire liability of the surety company to the claimant for the materials furnished by it under the contract between it and the Church Construction Company arises through the execution of the bond by the surety company as a surety for the construction company. The claimant could reach the surety company through the bond alone, which, with the statute as a part of it, defines and limits the rights of the claimant as against it, and the method and tribunals through which those rights might be enforced. His right of action against it through any form of legal proceeding was created by the bond and the statute, and must be enforced pursuant to the terms and conditions of the statute and not otherwise. (*Stitzer* v. *United States,* 182 Fed. Rep. 513; *United States* v. *Boomer,* 183 Fed. Rep. 726; *Baker Contract Co.* v. *United States,* 204 Fed. Rep. 390.) It was, however, a qualified and conditional, and not an absolute right or cause of action. An act of Congress, which at the same time and in itself authorizes or creates a new cause of action and prescribes the limitations thereof and of its enforcement, makes those limitations conditions of the liability itself. Such an act is not a statute of limitations, and a compliance with the conditions which it prescribes is indispensable to the enforcement of the right

it creates, because they are parts of or elements in the right itself and not limitations of the remedy only. The limitation of the remedy is a limitation to the right. (*The Harrisburg*, 119 U. S. 199; *Pollard* v. *Bailey*, 87 U. S. 520; *Fourth National Bank* v. *Francklyn*, 120 U. S. 747; *United States* v. *Boomer*, 183 Fed. Rep. 726; *Baker Contract Co.* v. *United States*, 204 Fed. Rep. 390; *Eberhart* v. *United States*, 204 Fed. Rep. 884.) The cause of action or the rights acquired by the claimant through the statute and bond could not be enlarged, limited or modified by the insolvency of the surety company or the Supreme Court of the state under its jurisdiction in the present action. The limitation to the right of the claimant and the liability of the surety company was fixed at the execution of the bond and stands unchanged and unchangeable before the court and its receiver. To apply to the right the limitation of the prescribed remedy is not to illegally confuse the remedy and the right; it is to apply the real intention of Congress and its act. While insolvency may under certain conditions affect remedies through equitable rules and procedure, it does not change substantive rights or liabilities. Such cause of action or right as the claimant originally had under the statute and bond has remained to it unaltered.

The surety company became the surety for the Church Construction Company as expressed in the bond. The contract between the United States and the Construction Company was completed and finally settled September 28, 1908. Within the six months from that date, terminating March 27, 1909, the United States had not instituted any action upon the bond. The statute contemplated that the rights and claims of all claimants under the bond should be adjudicated in a single action brought upon the bond. (*United States* v. *Congress Construction Co.*, 222 U. S. 199; *Eberhart* v. *United States*, 204 Fed. Rep. 884; *Baker Contract Co.* v. *United States*, 204 Fed. Rep. 390; *United States Fidelity & Guaranty*

*Co.* v. *Kenyon,* 204 U. S. 349; *Stitzer* v. *United States,* 182 Fed. Rep. 513.)  As we have already stated, the cause of action of the claimant here was given him by the statute and the means and manner of its enforcement as provided by the statute was an essential part of it.  The statutory prescription of the remedy was likewise a prescription as to the liability of the surety company.  It would not be seriously asserted that the claimant here could have had the liability of the surety company determined in an action or proceeding in the Supreme Court of the state between March 28 and September 28, 1909, in case the surety company had remained solvent.  A manifest answer would have been that the liability was subject to the proviso that it be completed and matured by the action to that end prescribed by the statute.  Under the statute and the bond, this in essential effect was the contract of the surety company: In case the Church Construction Company failed to promptly make payment to laborers or materialmen employed in the construction of the work, the surety company would be liable, within the penalty of the bond, for the unpaid claims upon the following and the exclusive conditions: (a) That the claimants be made parties to an action brought by the United States upon the bond, by intervention or directly, in order that all rights and claims might be adjudicated; (b) that during the second six months' period from the completion and final settlement of the contract, in case the United States had not brought an action, a claimant should bring suit in the name of the United States in the Southern District of New York, where the contract was to be performed, and not elsewhere; (c) that only one action should ever be brought upon the bond, in which the requisite notice should be given to all known creditors and all creditors should be permitted to file their claims in such action and be made parties thereto within one year from the completion of the work under the contract, and not later; if

the recovery upon the bond should be inadequate to pay the amounts found due to all of said creditors, judgment should be given to each creditor *pro rata* of the amount of the recovery. Until these conditions were exercised the liability of the surety company was not certain and absolute.

The liability of the surety company to the claimant did not become absolute and direct when, after it had supplied the materials to the original contractor, their price became due, or when the contract between the original contractor and the United States was completed and finally settled. It remained qualified and conditional. Its certainty or absoluteness depended upon the possibility that, by means of the only method provided or permitted by the statute and not then instituted, the validity and enforceability of the claim be adjudicated. A judgment for it in an action prescribed by and conducted in accordance with the requirements of the statute could alone render it complete and absolute. The means of enforcement define both the right of the claimant and the liability of the surety which it was the intention of Congress to create.

It is unnecessary to consider whether or not the presentation of the claim to the receiver and the subsequent proceeding is a suit or action brought by the claimant. We are not required to pass beyond the fact that the claimant has no right of action and the surety company no liability cognizable in this action or proceeding. Whatever right of action was in the claimant or liability on the part of the surety was conditioned upon the use of the statutory remedy. Divorced from that remedy the right and the liability are non-existent. The claimant should have conformed with the provisions of the statute and obtained in the statutory action and presented to the receiver a judgment establishing the validity and amount of his claim. His claim as presented was conditional and not absolute, and its allowance was error. (*People v. Metropolitan Surety Co.*, 205 N. Y. 135.)

For the reason stated the order of the Appellate Division should be affirmed, with costs. The first question should be answered in the negative and the second question remain unanswered.

MILLER, J. (dissenting). The condition of the bond was that the principal, the Church Construction Company, "shall promptly make full payments to all persons supplying it labor and materials in the prosecution of the work provided for in said contract." Indisputably, that condition was broken before the commencement of this action to dissolve the surety for its insolvency. The principal had not only failed to make payments as stipulated in the bond but had itself been dissolved for insolvency. The contract, for the performance of which the bond was given, was completed on September 28th, 1908, more than three months before this suit was brought. The full extent of the principal's default was fixed and determinable on that date. The liability of the surety was no longer contingent. The event upon which it had been contingent, a breach, had happened. Its liability may not have been liquidated, but there is a vast difference between a contingent, and an unliquidated liability or claim. If the surety's liability was contingent when this suit to dissolve it was brought, then every claim not reduced to judgment is contingent. In *People* v. *Metropolitan Surety Co.* (205 N. Y. 135) there had been no breach of the condition of the bond when the surety was dissolved. The liability was, therefore, contingent upon an event which might never happen, and the court applied the rule that a claim arising on a subsequent breach was not provable. That rule is applied *ex necessitate* because the assets of dissolved corporations have to be distributed sometime. But no case has yet decided that an unliquidated claim, or one not due, is not provable or that the recovery of a judgment is a condition precedent to the proving of a claim against such assets.

The surety could have determined and paid all claims arising on the bond before this suit was brought. It did not have to wait to be sued. Its liability arose on the default of its principal. A suit against it would be based on its default in failing to discharge that liability. The mere fact that an exclusive remedy was provided for its default in not paying as agreed did not make its liability contingent on the event of such a suit. To be sure, the claimant could not sue for six months after the final completion of the contract. A suit may not be brought on a debt not due, but the debt is none the less a fixed liability. In this case the debt was due. For obvious reasons an independent right of action on it was suspended or not given for six months. If the United States had brought suit within that time, the debt or the " claim " would have been provable in that suit; but the claim was in no sense contingent upon the bringing of such a suit. The statute plainly recognizes the claim as existent, not contingent, during the six months. It merely provides in effect that nothing can be done to enforce it during that time unless the United States sees fit to bring a suit.

I quite agree that the statute and the bond are to be construed together. My brother Collin construes the contract of the surety as one to become liable for the default of its principal but only after a judgment has been procured against it in the manner specified. I construe its contract as one to be liable absolutely within the sum named in the bond for the default of its principal upon the condition, however, that that liability, in case of its failure to discharge it, shall be enforced only as provided by the statute. There is a vital distinction between a condition of liability and a condition of the enforcement of that liability. It will introduce a novel and dangerous doctrine in the law of suretyship, especially in view of the extent to which that has become a business, to hold that the liability of a surety on a statutory bond does not arise

until resort has been had to the statutory method of enforcement. The contract of the surety is to pay on the default of its principal, and it should not be construed as one to pay only after a judgment has been recovered against it. The rule applied in *People* v. *Metropolitan Surety Company* (*supra*) would be doubly harsh if applied to a case like this. The necessity for its application in that case and in the many cases cited therein by Judge VANN does not exist in this case, because in this case the event, upon which liability depended, had happened and was no longer contingent and uncertain.

The question whether the claim must first be adjudicated in a suit brought in the Circuit Court of the United States for the Southern District of New York requires a closer analysis of the statute. (Chap. 778, 33 Stat. at L. 811; U. S. Comp. Stat. Supp. 1909, p. 948.) It is entitled, "An Act for the protection of persons furnishing materials and labor for the construction of public works." It is to be liberally construed to accomplish that purpose. (*Hill* v. *American Surety Co.*, 200 U. S. 197; *Title Guaranty & Trust Co.* v. *Crane Co.*, 219 U. S. 24.) I agree that it is to be construed as a substituted act for the act of August 13, 1894 (Chap. 280, 28 Stat. 278; U. S. Comp. Stat. 1901, p. 2523); but, in determining the purpose of the changes, the earlier act and the decisions under it are entitled to consideration. The earlier act did not provide for the priority of the claims of the United States and contained no limitations with respect either to the number or the time of commencement of actions or to the place where, or the court in which, they could be brought. Under that statute, it was held that the action might be brought in any proper state court (*United States* v. *Henderlong*, 102 Fed. Rep. 2), that the United States was not entitled to priority, and that in case of a large number of actions at law by claimants the surety might bring an ancillary suit in

equity to prevent a multiplicity of actions and to secure an equitable distribution. (*American Surety Company* v. *Lawrenceville Cement Company*, 96 Fed. Rep. 25.) It is plain that the purpose of the change was to secure priority of claim to the United States, to prevent a multiplicity of suits and to provide an orderly way of enforcing all claims in one suit and of equitably distributing the recovery among claimants.

The statute, then, requires a bond to be given for the benefit of those supplying labor and materials. If it stopped there, as the earlier statute did, a claimant could have brought suit in any court having jurisdiction of the parties. Recognizing that, on a breach of the condition of the bond, persons furnishing labor and materials had "claims" against the surety, the statute provided in effect that they could be adjudicated in a suit brought by the United States within six months after the final completion of the contract, or, in case the United States did not sue, in a single suit brought within a year in the Circuit Court in the district in which the contract was to be performed. Undoubtedly, the remedy provided is exclusive. Undoubtedly, the Circuit Court for the Southern District of New York had exclusive jurisdiction of a suit against the surety on a claim arising on the bond. But I insist that this is not such a suit, and that the claim and the exclusive remedy provided for its enforcement are distinct.

The appellant was enjoined from bringing any action against the insolvent corporation or the receiver, the corporation became *civiliter mortuus*, and the Supreme Court took possession of its assets to distribute them, not among creditors whose claims had been adjudicated, but "among its stockholders and its fair and honest creditors." An officer of the court took the place of the dissolved corporation, and the duty, theretofore resting on the corporation to pay its debts, without putting creditors to a suit to recover them, devolved on the receiver to the

extent that he had assets. The remedy provided for the recovery of a claim against the corporation before it was dissolved can have no application to a proceeding in an action like this to determine the claims of creditors. I grant that a suit is a proceeding in a court of justice for the enforcement of a right. (*Drake* v. *Gilmore*, 52 N. Y. 389, 394.) But this is a suit to dissolve a corporation, and this is a proceeding in that suit to enable the court completely to exercise the jurisdiction which it has assumed. The nature of the action, not of the particular proceeding in the action, determines the extent of the court's jurisdiction. The jurisdiction to dissolve the corporation and distribute its assets draws with it the jurisdiction to determine every question necessary to make a proper distribution. The appellant here is in no sense a plaintiff; if left to itself it could have pursued the exclusive remedy provided for the enforcement of its claim. But the Supreme Court intervened, enjoined it from pursuing that remedy, dissolved its creditor and took possession of the latter's assets for the purpose of distributing them. No other court in any other jurisdiction could thereafter interfere or exercise the slightest control over those assets or their distribution. Pursuant to the invitation of the court — the advertisement for claims — the appellant presented its claim. It was not a voluntary suitor, pursuing an independent remedy for the enforcement of a right. It was virtually a defendant, forced to come in and prove its claim to the only court which could direct the payment to it of a single dollar of its debt. The action to dissolve the corporation and distribute its assets was not thus converted into a suit on the bond by the appellant against the dissolved corporation.

Doubtless the Supreme Court might have permitted an action to be brought in the Federal court for the purpose of determining the amount of the claims arising on the bond, but it was not bound to do so. "The court which appoints a receiver of the property of a corporation itself

holds and administers the estate, through the receiver as its officer, and must decide whether it will determine for itself all claims of or against the receiver or allow them to be litigated elsewhere." (*Porter* v. *Sabin*, 149 U. S. 473, 479.) "When the object of the action requires the control and dominion of the property involved in the litigation, that court which first acquires possession, or that dominion which is equivalent, draws to itself the exclusive right to dispose of it, for the purposes of its jurisdiction." (*Heidritter* v. *Elizabeth Oil Cloth Company*, 112 U. S. 294, 305.) It is a familiar principle of equity that when a court acquires jurisdiction it will retain it for the purpose of completely determining the matters in controversy. (*Douglass* v. *Ferris*, 138 N. Y. 192.) While the Supreme Court of this state has no jurisdiction to entertain a suit on a bond given pursuant to the Federal statute, it does have jurisdiction to determine the rights and obligations arising on such bond when incidentally brought in question in a suit of which it has jurisdiction, especially when it is necessary to determine those rights and obligations in order to distribute a fund in its custody. The principle applicable in patent cases is analogous. If a suit arises on a contract the state courts have jurisdiction even though the validity of a patent be incidentally involved, and *vice versa*, if it arises under the patent laws, the Federal courts have jurisdiction even though the construction of a contract be incidentally involved. (*Littlefield* v. *Perry*, 21 Wall. [U. S.] 205; *Pratt* v. *Paris Gaslight & Coke Company*, 168 U. S. 255; *Excelsior Wooden Pipe Company* v. *Pacific Bridge Company*, 185 U. S. 282.) The principle is that jurisdiction of the subject-matter draws with it the whole case, even of matters which standing alone the court would not have jurisdiction to decide. Having jurisdiction of the fund and the distribution of it, the court necessarily had jurisdiction to determine the validity of all claims upon it, even of those arising perforce of the laws of another jurisdiction

and by themselves cognizable only by the courts of that jurisdiction. This is not the case of a lien to preserve which it may be necessary to take certain statutory proceedings as was the case of *Clifton* v. *Foster* (103 Mass. 233). But in such a case there could be no interference with the proceedings of the court first acquiring jurisdiction of the property, and it is even doubtful whether it would be necessary for a lienor to take the statutory proceedings in some other jurisdiction necessary to preserve a lien in order to prove to the court having jurisdiction of the property his right to a share on its distribution.

Having acquired jurisdiction, the Supreme Court could determine the priority of claims arising on the bond and whether a *pro rata* deduction was necessary because of an excess of claims over the liability of the surety, precisely as that could have been determined in a suit in the Circuit Court of the United States. There is no difficulty on that head, as the total claims are less than that liability. It would have served no useful purpose to require the claimant to bring a suit in the Federal court, and the exclusive remedy provided for the enforcement of a claim against the defendant corporation ceased to apply the moment the Supreme Court dissolved the corporation, took possession of its assets and enjoined all creditors from bringing suits against the corporation or its receiver.

The cases of *Fourth National Bank of N. Y.* v. *Francklyn* (120 U. S. 747), cited by my brother COLLIN, and *Flash* v. *Conn* (109 U. S. 371) illustrate the distinction between a condition of liability and a condition of the enforcement of that liability. The former case arose on a statute of the state of Rhode Island similar to an earlier statute of the State of Massachusetts under which stockholders could be charged by execution or action upon a judgment against the corporation, and it was held that a judgment against the corporation was essential to liability of the stockholder. The latter case arose on a statute of the state of New

York imposing an original liability upon stockholders and allowing a suit to be brought to enforce that liability, but only after obtaining a judgment against the corporation and the return of an execution unsatisfied; and it was held on the authority of *Shellington* v. *Howland* (53 N. Y. 371) that the bankruptcy of the corporation excused compliance with the condition requiring suit to be first brought against it. In this case the claim, the liability, arose on the breach of the condition of the bond. The statute imposed conditions on the maintenance of an action to enforce the claim, but when the Supreme Court dissolved the corporation and took possession of its assets to distribute them among its creditors, it was no longer necessary or practical, if indeed it was possible without leave of the court, to bring such an action.

In my opinion, the decision of the Special Term was right.

WERNER, CHASE and HOGAN, JJ., concur with COLLIN, J.; WILLARD BARTLETT, Ch. J., and HISCOCK, J., concur with MILLER, J.

Order affirmed.