## MORLEY CONST. CO. et al. v. MARYLAND CASUALTY CO.

### No. 10477.

Circuit Court of Appeals, Eighth Circuit.
June 22, 1936.

Rehearing Denied July 20, 1936.

Martin J. O'Donnell, of Kansas City, Mo. (William Buchholz, of Kansas City, Mo., on the brief), for appellants.

Spencer F. Harris, of Kansas City, Mo. (Paul G. Koontz, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a suit in equity brought by the Maryland Casualty Company against the Morley Construction Company and the Merchants Bank of Kansas City, Mo. Diverse citizenship is alleged and admitted.

It appears that plaintiff executed a surety bond for defendant Morley Construction Company in connection with a construction contract entered into between said Morley Construction Company and the United States. The bond, dated on or about July 28, 1932, was in the standard form of performance bonds.

The term "defendant" hereinafter used means the Morley Construction Company.

Plaintiff seeks by its complaint the following relief: (1) Exoneration by the defendant from payment of any bills for labor and materials furnished under said construction contract; (2) subrogation to defendant's claim against the United States by reason of certain payments alleged to have been made by plaintiff to creditors of the Morley Construction Company; (3) specific performance of a certain contract (Exhibit A) entered into between plaintiff and said defendant subsequent to the making of said bond.

As to Specific Performance of Exhibit A.

It appears that in carrying out the construction contract, the defendant, Morley Construction Company, became involved in financial difficulties, and an agreement (Exhibit A, set out in the margin [1]) was entered into between it and the Maryland Casualty Company, whereby the Casualty Company agreed to advance to the Construction Company the sum of $5,000 to be placed in a joint account. The Casualty Company also agreed: "Fifth: The Maryland Casualty Company further agrees to

---

[1] "Exhibit A.

"Agreement

"Whereas the Morley Construction Company of Kansas City, Missouri is the General Contractor under a contract with the United States Government for the construction of the Veterans' Administration Hospital at Batavia, New York, said contract bearing date of July 23, 1932, and

"Whereas the Maryland Casualty Company executed a bond bearing date of August 1, 1932, wherein and whereby said Maryland Casualty Company guaranteed the faithful performance of the above mentioned contract, and

"Whereas the Morley Construction Company has encountered financial difficulties in the construction of said Veterans' Administration Hospital and has called upon the Maryland Casualty Company for financial assistance in regard to the completion of said contract in accordance with a letter to the Maryland Casualty Company from the Morley Construction Company bearing date of April 27, a copy of which is hereto attached and made a part of this instrument, in consideration of the mutual promises of the parties hereto it is mutually agreed as follows:

"First: The Morley Construction Company hereby agrees to deposit at the M & T Trust Company in the City of Buffalo, New York, the sum of Five Thousand ($5,000.00) Dollars and to deposit from time to time certain other sums of money to be used toward the completion of said contract. The Morley Construction Company further agrees to deposit in said account for the benefit of said contract all moneys and estimates received from the United States Government because of said work.

"Second: The Maryland Casualty Company hereby agrees to deposit in said M & T Trust Company to the account of the Morley Construction Company the sum of Five Thousand ($5,000) Dollars.

"Third: It is mutually understood and agreed that the said Maryland Casualty Company shall have joint control of all moneys deposited in said account and that no check, draft or withdrawal order shall be drawn on said account and paid by said bank without the approval of the said Maryland Casualty Company by its representatives, James F. Kelly and/or Martin C. Schaus, said approval to be designated on said check, draft or withdrawal order by the initials of the above individuals, to-wit, J. F. K. and/or M. C. S.

"Fourth: The Morley Construction Company hereby agrees to pay back to the Maryland Casualty Company the aforementioned sum of Five Thousand ($5,000.-00) Dollars out of the proceeds of said job if there be sufficient money and if not, they thereby bind themselves and agree to pay said money themselves to the Maryland Casualty Company.

"Fifth: The Maryland Casualty Company further agrees to place on deposit in said account to the credit of the Morley Construction Company moneys to pay off plasterers' claims which have not been paid by D. Giamberardino & Sons who employed said plasterers and also sufficient money to complete the Giamberardino plastering contract if the amount to be paid to complete said contract is deemed reasonable and satisfactory.

"Sixth: The Morley Construction Company hereby agrees to pay to the Maryland Casualty Company any and all moneys advanced to them for payment of plasterers' claims or other laborers' claims on the D. Giamberardino & Sons contract and any and all moneys advanced by the said Maryland Casualty Company to assist in the completion of the D. Giamberardino & Sons contract.

"Seventh: The Morley Construction Company hereby agrees to give a note in the sum of Five Thousand ($5,000.00) Dollars bearing even date of this instrument to the Maryland Casualty Company as security to them for the payment of the sum of Five Thousand ($5,000.00) Dollars mentioned in Paragraphs Second and Fourth in this instrument.

"Dated: April 28, 1933.

"Morley Construction Company,
"By H. F. Morley, President.
"Maryland Casualty Company,
"By James F. Kelly."

place on deposit in said account to the credit of the Morley Construction Company moneys to pay off plasterers' claims which have not been paid by D. Giamberardino & Sons who employed said plasterers and also sufficient money to complete the Giamberardino plastering contract if the amount to be paid to complete said contract is deemed reasonable and satisfactory."

The Construction Company also agreed to place a certain amount in a joint account.

The Casualty Company did not fulfill all of the covenants assumed by it in the agreement. On cross-examination, the witness Herbert F. Morley, president of the Morley Construction Company, testified as follows:

"Q. I see where the petition states that they agreed to pay off plasterers' claims and also sufficient money to complete the plastering contract. Could you tell the Court the sum total of those two items, that is, the expense of this plastering contract, that is, those that had not been paid, and also sufficient to complete the plastering contract? What is the total of that, if you know? A. Well, they paid $10,700 and some odd dollars. They paid $5,000.-00 and they paid $5,740.00 toward the completion of the plastering contract. * * *

"Demand was made on the Maryland by the witness for them to pay the plastering. The new subcontractor was the Hudson Plastering Corporation. The final bill for this plastering was $15,000 of which $7,500 was unpaid. When the witness requested Kelly to give him money to pay the first payment at the end of the first month's work by the Hudson Plastering Company, Kelly advised him to pay it out of the funds of the joint account.

"Q. Well, did he say anything as to whether he would or wouldn't carry out his contract? A. Not at that time, no, sir.

"Q. Did he at any other time? A. Yes, sir.

"Q. What was it he said? A. Well, when the next month's payment came due, the first month's payment amounted to approximately $7,500 and request was made that the money be advanced and he advised that I pay it and take care of it out of the funds of the joint account. The next month's account came due and left a balance of $2,500 on the previous month, together with about $6,000 from the ensuing month, and he suggested that I take care of that out of the funds in the joint account, and there wasn't enough money available for that, so in order to keep the plastering contractor on the job and have him finish up, I did finally pay him $2,500 out of the joint account and whether at that time or within a few days after that, when I discussed it with him again, Mr. Kelly made the remark that the Maryland Casualty Company was not going to put any more money into that account or that job.

"(The witness made no further demand upon Kelly for payment)."

The witness Kelly, an attorney employed in the office of the Casualty Company at Buffalo, N. Y., testified as follows: "In addition to the $10,700 the Maryland agreed to take care of the disputed plastering claims if the Veterans' Administration ruled that it was necessary to pay them. They were never paid because it was ruled that the Veterans' would stand on the receipts as given by the employees. The letter to the Veterans' Administration, Plaintiff's Exhibit 4, the witness thought had been dictated by B. D. Morley, and Mr. Cushwa. At the time, Herbert Morley and the witness discussed the payment of the plasterers' bills. There was an estimate coming due on the job and the witness said to Mr. Morley, 'Are you going to pay that part on the plaster contract out of the estimate, just as we understood,' and Morley did so. That Morley did ask him to pay the Hudson claims and he told him to pay it out of the estimate coming due."

The court found as to this matter as follows:

"It was further stipulated in this written agreement that the Casualty Company, in addition to the $5,000 to be deposited by it in the joint account, would advance to the defendant and deposit in the said account a sufficient sum of money to pay off all plasterers' claims unpaid and a further sufficient sum of money to complete the plastering. * * *

"Pursuant to the agreement referred to in finding of fact No. 2, the Casualty Company and the Construction Company deposited $5,000 each in the joint account and the Casualty Company made a further deposit in the joint account of $5,700 but it did not deposit in the joint account a sufficient sum of money to complete the plastering contract."

As conclusions of law the court found: "Plaintiff is not entitled to a decree of specific performance of the agreement referred to in finding of fact No. 2. * * * "

We cannot agree with this conclusion of the trial court.

Acquiescence by defendant in a modification of the contract, Exhibit A, which modification was thereafter carried out, deprives the conduct of the plaintiff of any taint of inequity. Becker v. Becker, 250 Ill. 117, 95 N.E. 70, Ann.Cas.1912B, 275; Langley v. Devlin, 95 Wash. 171, 163 P. 395, 4 A.L.R. 32.

Such acquiescence, we think, was shown by the evidence in the case at bar.

We do not wish it to be thought that we are departing from the well-established rules regarding the granting of the remedy of specific performance. Such is not our intention.

This court, in Shubert v. Woodward, 167 F. 47, at page 54, has said: "The specific performance of a contract by a court of equity is not a matter of right. It rests in the discretion of the court, not in its arbitrary whimsical will, but in its sound judicial discretion informed and directed by the established principles, rules, and practice of equity jurisprudence. Hennessey v. Woolworth, 128 U.S. 438, 442, 9 S. Ct. 109, 32 L.Ed. 500. Nor are these principles and rules and this practice hard, fast, or without exception. They are rather advisory than mandatory, and the application of the rules and of their exceptions to each particular case as it arises is still intrusted to the conscience òf the chancellor. Yet these principles and rules and this practice serve to inform the intellect and to enlighten the conscience, and by them the judicial discretion of the court must be guided."

In Town of Glenwood Springs v. Glenwood Light & Water Co., 202 F. 678, at page 684, L.R.A.1915C, 438, this court lays down the rule: "And courts of equity will not ordinarily compel the specific performance of a contract, either by decree or by an injunction against its violation, at the suit of a party who is guilty of a *substantial* breach of it." (Italics supplied.)

In Michigan Pipe Co. v. Fremont Ditch, Pipe Line & Reservoir Co. (C.C.A.8) 111 F. 284, 287, the court states the rule as follows: "A court of equity will leave to his remedy at law—will refuse to interfere to grant relief to—one who, in the matter or transaction concerning which. he seeks its aid, has been wanting in good faith, honesty, or righteous dealing. While in a proper case it acts upon the conscience of a defendant, to compel him to do that which is just and right, it repels from its precincts remediless the complainant who has been guilty of *bad faith, fraud,* or any *unconscionable act* in the transaction which forms the basis of his suit." (Italics supplied.)

We think relief can be granted in the case at bar without doing violence to the foregoing rules.

The breach of the contract (Exhibit A) on the part of plaintiff, which defendant alleges precludes plaintiff from obtaining the remedy of specific performance, is the failure by plaintiff Casualty Company to deposit in the joint account agreed upon in said contract, Exhibit A, sufficient moneys to pay for completing the plastering contract. There was deposited in the joint account by plaintiff the sum of $10,700, but this was not sufficient to pay in full the amount due or to become due for plastering.

Defendant makes these allegations in its answer:

"Defendant admits that the plaintiff deposited in said account a total of Ten Thousand Seven Hundred ($10,700) Dollars, but states that said sum was Seventy-eight Hundred ($7,800) Dollars less than the said plaintiff had so promised and agreed to deposit, and said plaintiff thereby breached said contract and thereby forfeited all rights thereunder.

" * * * But the said defendant alleges that the plaintiff, in part performance only of the said supplemental contract deposited the said sum of Ten Thousand Seven Hundred ($10,700.00) Dollars and refused to deposit the further sum of Seventy-eight Hundred ($7,800) Dollars, under and by virtue of the said contract and that for said reason the said contract was broken by the said plaintiff to the great damage of the defendant Morley Construction Company."

We have set out heretofore the testimony of the witnesses Herbert F. Morley and Kelly relative to this alleged breach. The testimony may be sufficient to show that plaintiff company did not strictly fulfill its agreement as to the amount of its deposit in the joint account.

But other considerations must be kept in mind. The Morley Construction Company was insolvent. The contract, Exhibit A, was entered into for the purpose of extricating the defendant Morley Construction Company from financial difficulties in connection with the construction contract, and for completing the construction contract. This was the purpose of establishing the joint account provided for in Exhibit A. This purpose was accomplished. The construction contract was completed to the satisfaction of the United States government, and final payment ordered. There were facts which led the Casualty Company to believe the Morley Construction Company did not intend to use the funds coming from the United States government in the payment for labor and materials used on the construction contract.

There is no sufficient showing that the failure of plaintiff to deposit the full amount promised caused any delay or resulted in any damage to defendant company. On the contrary, at the time of answering by defendant in the present suit, the joint account established by Exhibit A still had in it, according to the allegations of the answer, the sum of $7,900.

It may be noted that the sixth clause of Exhibit A provides: "Sixth: The Morley Construction Company hereby agrees to pay to the Maryland Casualty Company any and all moneys advanced to them for payment of plasterers' claims or other laborers' claims on the D. Giamberardino & Sons contract and any and all moneys advanced by the said Maryland Casualty Company to assist in the completion of the D. Giamberardino & Sons contract."

It should also be noted as perhaps illuminating the situation, that Herbert F. Morley testified as follows:

"The creditors were pressing the Morley Company during this time.

"Q. How did it happen that you had $7,900.00 in the bank that you hadn't paid out if they were pressing you so hard? A. Well, we proceeded to pay off the smaller accounts out of that fund and it didn't represent enough to take care of any of the larger ones.

"Q. Isn't that what happened, Mr. Morley, didn't you tell Mr. Kelly you wanted to let that account ride as it was and wait until you got the whole amount and then try and make advantageous compromise settlements when you had the whole amount available? A. I believe I did."

When the whole of the evidence is examined closely, we do not find any unconscionable or fraudulent act on the part of plaintiff; nor do we think that the failure of the plaintiff to fulfill its obligation under Exhibit A with strictness, precludes it, under all the circumstances, from asking relief in the case at bar by way of specific performance, or that the court will abuse its discretion in granting the same.

■ Nor do we think a decree for specific performance of the contract, Exhibit A, is impossible of being carried out.

A court of equity should mould its decree to meet the exigencies of the situation.

What the plaintiff is seeking by its present complaint is to have the moneys still coming to defendant under the construction contract applied to payment of bills for labor and materials furnished for the completion of the construction.

The circumstances appearing in the record warrant such an application.

That such moneys come within the provisions of the contract, Exhibit A, we think too clear for argument.

An injunction against using the moneys except as agreed upon, and an order to place said moneys when received in the joint account and disburse the same in payment of just claims for labor or materials, would meet the requirements and rights of plaintiff and would not be impossible of performance.

We think a decree along such lines should be granted by the trial court.

### As to Exoneration.

The trial court denied the relief of specific performance and granted the relief of exoneration.

We are in grave doubt whether exoneration can properly be granted.

■ In 50 C.J., p. 244, the statement is made: "Before maturity of the debt or accrual of liability the surety has no right of action in equity to be indemnified against apprehended danger of loss by reason of his undertaking."

It would seem from this statement that there can be no exoneration except from an existing liability against the surety. This is also the result of the cases as we read them.

Ordinarily the liability of the principal and the liability of the surety arise at the same time; and the cases hold that when the liability arises, the surety may sue for exoneration; but this is on the assumption that the liability of the principal and the liability of the surety arise at the same time.

In the case at bar the situation is different. The liability of the principal arises, in the absence of special agreement, when the labor or materials are furnished.

But a statute (40 U.S.C.A. § 270) controls the beginning of the liability of the surety. The statute provides, among other things, as follows: "If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the district court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later."

This statute has been construed to the effect that there is no liability or cause of action against the surety until the expiration of the six months mentioned. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893; Stitzer v. United States (C.C.A.) 182 F. 513; People v. Metropolitan Surety Co., 211 N.Y. 107, 105 N.E. 99.

In the McCord Case the court used the following language (233 U.S. 157, at page 162, 34 S.Ct. 550, 552, 58 L.Ed. 893): "By this statute a right of action upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before, and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute. The right of action given to creditors is specifically conditioned upon the fact that no suit shall be brought by the United States within the six months named, for it is only in that event that the creditors shall have a right of action and may bring a suit in the manner provided. The statute thus creates a new liability and gives a special remedy for it, and upon well-settled principles the limitations upon such liability become a part of the right conferred, and compliance with them is made essential to the assertion and benefit of the liability itself."

In the Metropolitan Surety Company Case, the Court said (211 N.Y. 107, at page 114, 105 N.E. 99, 101): "Obviously the entire liability of the surety company to the claimant for the materials furnished by it under the contract between it and the Church Construction Company arises through the execution of the bond by the surety company as a surety for the construction company. The claimant could reach the surety company through the bond alone, which, with the statute as a part of it, defines and limits the rights of the claimant as against it, and the method and tribunals through which those rights might be enforced. His right of action against it through any form of legal proceeding was created by the bond and the statute, and must be enforced pursuant to the terms and conditions of the statute and not otherwise. Stitzer v. United States, 182 F. 513, 105 C.C.A. 51; United States v. Boomer, 183 F. 726, 106 C.C.A. 164; Baker Contract Co. v. United States, 204 F. 390, 122 C.C.A. 560. It was, however, a qualified and conditional, and not an absolute, right or cause of action. An act of Congress, which at the same time and in itself authorizes or creates a new cause of action and prescribes the limitations thereof and of its enforcement, makes those limitations conditions of the liability itself. Such an act is not a statute of limitations, and a compliance with the conditions which it prescribes is indispensable to the enforcement of the right it creates, because they are parts of or elements in the right itself and not limitations of the remedy only.

The limitation of the remedy is a limitation to the right."

It would seem to follow from these authorities that there was no liability on the part of the surety in the case at bar until the expiration of the six months' period. This being the situation, there was nothing from which the surety could be exonerated prior to the expiration of that period, and any suit prior to that time would be premature.

It is conceded that the six months' period had not expired in the case at bar.

For this reason, we have preferred not to place the relief to be granted on the basis of exoneration, but rather on the basis of specific performance of the agreement, Exhibit A.

As to the Matter of Subrogation.

This form of relief seems not to be pressed on the present appeal. Furthermore, we think the trial court was correct in its disposition of this matter, and, therefore, discussion is pretermitted.

The case is accordingly remanded for modification of the decree in accordance with the foregoing views, and, as so modified, the decree is affirmed.