### EVALE v. TREMAINE, Comptroller of State of New York, et al.

### No. 2108.

District Court, W. D. New York.

Feb. 5, 1938.

Charles Platt Williams, of Lyons, N. Y., for plaintiff.

John J. Bennett, Jr., Atty. Gen., State of New York (John M. Stull, Asst. Atty. Gen., of counsel), for defendants.

BURKE, District Judge.

This action is submitted upon an agreed statement of facts. The First National Bank of Newark, New York quit business October 7, 1931, and since that time has been in the hands of the plaintiff as receiver in the process of liquidation. When the bank closed it had on hand certain funds deposited by officials of the Newark State School, an institute for mental defectives, maintained by the state of New York under the Mental Hygiene Law, Consol.Laws, c. 27. One account was carried in the name of Newark State School, and two accounts, one a checking account and one an interest account, were designated E. D. Pritchard, Industrial. E. D. Pritchard was steward and deputy treasurer of the Newark State School. The total in these three accounts on the day of closing was $6,933.23, all of which were concededly moneys belonging to the state of New York.

There were two other accounts, one a checking account and the other an interest account, carried in the name of E. D. Pritchard, trustee, in which two accounts there was on deposit $51,007 when the bank closed. The controversy occurs as to the question of whether or not these funds were public moneys and, as such, secured. On June 21, 1919, the Comptroller of the State

of New York designated the bank as a depository of state funds pursuant to the State Finance Law, Consol.Laws, c. 56. The bank thereupon filed with the Comptroller a depository bond in the sum of $20,000 with the Massachusetts Bonding & Insurance Company as surety. This bond was dated June 21, 1919, and was renewed annually by certificates of renewal, the last of which was dated June 10, 1931, and which continued the bond in force until June 21, 1932.

The bond, after reciting that the bank had "been duly designated to receive and keep on deposit such moneys of the People of the State of New York as may be deposited therein from time to time by the Comptroller of the State of New York," was conditioned: "That the said First National Bank of Newark, New York will safely keep and well and faithfully account for all such moneys that may be deposited in or are now held by said bank on deposit, etc." On June 25, 1931, the bank wrote the State Comptroller suggesting, because of the increase in bond premiums, a substitution therefor of certain bonds of the state of New York. The Comptroller replied by letter of June 27, 1931, "* * * and begs to advise that if you will forward the State of New York bonds registered in the name of your bank, the necessary papers will be sent you for execution. Upon approval by the Attorney General, a release of the Surety Company bonds now in force will be issued and sent you." On August 8, 1931, the bank deposited with the Comptroller three "New York State Canal Improvement 3% bonds" totaling $20,000, for which the Comptroller issued two certificates of deposit accompanied by a depository agreement with a recital that these bonds "are held as security for the safekeeping and upon condition and for the purpose of saving harmless and indemnifying the People of the State of New York from and against all loss, both of principal and interest, costs, damages, or expense of any other kind or nature, that may be incurred for or on account of State funds or moneys heretofore or hereafter deposited in or held by said banking institution or for which it shall in any way become liable to the State, on account of funds deposited by the Newark State School for Mental Defectives, Newark, New York." After several letters asking for the return of the surety bond, the bank received a reply from the Comptroller under date of September 14, 1931, stating that an audit had disclosed that all the accounts held by the bank averaged around $70,000, and that therefore the accounts were not adequately secured. The Comptroller asked for a statement of the balance in the various funds, stating that he would then be in a better position to determine the exact amount of security that would be required. The bank protested upon being asked for additional security, contending that the Pritchard, trustee, accounts were accounts containing private funds of the inmates, and again asked for the return of the surety bond. On September 25, 1931, the bank refused to give the required security and asked to be relieved of the deposit and for the return of the surety bond.

On October 6, 1931, checks were drawn payable to the Arcadia Trust Company in the total sum of $51,596.02. The checks were presented for payment to the First National Bank of Newark on October 6, 1931, whereupon the bank issued a New York draft payable to the Arcadia Trust Company for the total sum of $51,596.02. The bank closed the following day before the draft was paid.

Irrespective of the issuance of the draft, the amount remaining due on the several accounts on October 7, 1931, is as follows:

| | |
|---|---|
| Newark State School | $ 4,575.02 |
| E. D. Pritchard, Industrial, checking account | 635.21 |
| E. D. Pritchard, Industrial, interest account | 1,723.00 |
| E. D. Pritchard, Trustee, checking account | 4,274.20 |
| E. D. Pritchard, Trustee, interest account | 46,732.80 |
| | $57,940.23 |

This amount includes interest on the interest accounts to the date of closing.

The Comptroller still holds both the surety bond and the Canal Improvement bonds. Dividends totaling 67 per cent. have been declared, but no part of such dividends have been paid on the deposits involved. Moneys to pay such dividends are on hand available for payment.

The surety company bond on its face secured only moneys of the people of the state of New York. The statutory authority for the requirement of said bond by the state and for the giving of the bond by the bank was contained in the State Finance Law. Section 8 deals with deposits in banks by the Commissioner of Taxation and Finance. Section 10 deals generally with deposits of moneys by state offi-

cers. Section 11 deals specifically with the deposit of moneys by charitable and benevolent institutions supported, in whole or in part, by the state. All of the sections relate only to state moneys. Being a statutory bond, it imposed only such obligations as are prescribed by the statute. People v. Metropolitan Surety Company, 211 N.Y. 107, 105 N.E. 99.

Concededly part of the moneys on deposit that were state moneys were secured by the surety company bond. It is necessary to follow the moneys in the trustee accounts to their source to determine their character. The Pritchard, trustee, interest account was opened December 20, 1927, by the deposit of $28,385.63. This deposit represented the collective balance in about ninety separate accounts theretofore carried in the names of the patients by Pritchard as trustee. All of the moneys in the account were either the earnings or savings of the patients or moneys sent by other persons for the use and benefit of the patients.

The New York State Mental Hygiene Law, § 127, subd. 1, provides as follows: "Whenever in the judgment of the superintendent of any state institution for mental defectives there is a group of inmates in such institution of such a character that their interests and the interests of the state would both be better served through their colonization outside of such institution and if such colony can be established without damage to private property or detriment to the public welfare these facts may be brought to the attention of the commissioner of mental hygiene and, if he shall approve, he may authorize the superintendent to establish such a colony. Strict account shall be kept by the superintendent of the institution of the cost of the administration of such colony, of the earnings and expenses thereof, of the wages of the inmates and any other direct compensation paid to them, and of all financial transactions of such colony, such accounts to be kept in a manner prescribed or approved by the state comptroller. All moneys received by each colony other than the direct compensation of inmates from sources other than the state shall be paid each month, before the fifth day of the month, to the treasurer of state institutions in the department, who shall pay the same into the state treasury on or before such day. The treasurer shall render to the state comptroller on or before the fifteenth day of each month a verified detailed statement of all receipts and expenditures of each colony for the preceding month, in such form as the state comptroller may prescribe or approve. The earnings in wages or other direct compensation of the inmates of each colony shall be paid over to the deputy treasurer of the institution who shall keep account of them in a common fund and deposit the moneys received at least weekly in an account at interest, in his name as trustee of such fund, in a bank or banks to be designated by the commissioner of taxation and finance and the state comptroller. Such deputy treasurer shall keep strict account of the earnings of each inmate of such colony. The commissioner shall make rules from time to time in respect to the disposition of such earnings and as to what portion if any shall be paid to the state as maintenance reimbursement and as to what portion, if any, shall be paid to the inmate earning such wages or compensation or set aside for the use or benefit of such inmate and what portion, if any, may be used for the common benefit of the inmates of the institution or of the colony to which the inmate is assigned. Upon discharge from the institution of any inmate having a balance of earnings to his credit the superintendent shall determine whether such balance shall be immediately paid over to such discharged inmate or his guardian or shall be held in trust by the deputy treasurer until such time as in the judgment of the superintendent on authorization by the commissioner it would serve the best interests of such inmate to pay to him or to his guardian such balance or any part thereof. All such colonies shall be open to the inspection of the commissioner and his representatives from the department, and in so far as the financial accounts and supplies of such colonies are concerned, they shall be open to the inspection of the state comptroller and any authorized agents from his office or from the department of mental hygiene. The superintendent of an institution shall report to the commissioner as often and as fully as he may require such facts regarding the colonies connected with the institution as the commissioner shall order. Upon the direction of the commissioner the superintendent shall establish or discontinue such colony or colonies."

It will thus be seen that the statute recognizes private funds of the inmates. It provides a method of allocating the moneys to those who shall be found to be entitled to

them. In this way, by the establishment of rules in accordance with the statute, the state may obtain that portion to which it may be entitled as maintenance reimbursement.

The agreed statement of facts is silent as to the making of any such rules by the commissioner in respect to the disposition of such earnings. Counsel for the defendant urges, in the absence of anything in the agreed statement of facts as to what was done, that the court rely upon the presumption that a public officer, in the absence of proof to the contrary, will be presumed to have fully and properly performed all of his official duties and in accordance with that presumption asks the court to find that rules as to the disposition of the moneys were made by the commissioner of mental hygiene in compliance with the mandate of the statute, and that allocation of the funds as between the state and the patients was made and that the funds in the Pritchard, trustee, interest account had been appropriated by the school authorities for maintenance reimbursement to which the state was entitled, and that the Pritchard, trustee, checking account represented the amount credited to the patients as a part of their earnings over and above the maintenance reimbursement which it was intended should be paid them. It would be as logical to find that rules were made in accordance with the statute and that the state had no interest in the moneys because it had not taken them as it could have done. If rules had been made and disposition of the moneys had under said rules, it would have been a simple matter to incorporate those facts in the stipulation and not to leave it to presumption. The transfer of title to the funds should rest upon something more tangible than surmise. With the proof as it stands it must be found that no allocation has been made of the moneys in the trustee accounts to either the state, the individual inmates, or for the common benefit of the inmates of the institution. Until such allocation is made in accordance with the statute there is no appropriation of the funds by the state and the funds do not become state moneys. They were, therefore, not secured by the surety bond.

It is significant that the Comptroller was content with the requirement of a $20,000 bond until September 14, 1931, although the trustee accounts alone had a balance of over $32,000 when they were opened in December, 1927. In addition to these moneys, there were other moneys of the Newark State School on deposit, concededly state moneys. Presumably the Comptroller would have required a bond that more nearly approximated the aggregate of the funds on deposit if he had viewed the moneys in the trustee accounts as state funds.

Even if the Canal bonds furnished by the bank could be construed as an attempt to secure the funds in the Pritchard, trustee, accounts it would be without authority in law, and void. A national bank has no power to pledge its assets to secure a private deposit. Texas & Pacific Railroad Co. v. Pottorff, receiver, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777.

The State Canal bonds were offered by the bank and accepted by the state in lieu of the surety company bond and not as additional security. The claim of the state to retain both as security rests upon nothing except the circumstance that it has possession of both. The failure of counsel for the defendants to contend that it is entitled to both as security is some indication that the defendants themselves view the claim as untenable. The surety bond should be surrendered.

The facts set forth in the formal stipulation entered into under date of July 6, 1937, between Charles P. Williams, attorney for the plaintiff, and John J. Bennett, Jr., Attorney General, attorney for the defendants, are to be deemed findings of fact together with the additional statements of facts contained in this opinion.

## Conclusions of Law.

1. The depository bond dated June 21, 1919, executed by the Massachusetts Bonding & Insurance Company, as surety, and continued in force by renewal certificates, was superseded by the substituted security and should be canceled, surrendered, and released.

2. The New York State Canal Improvement bonds in the amount of $20,000 should be surrendered and returned by the Comptroller to the plaintiff on the payment by the plaintiff to the Comptroller of the sum of $6,933.23, the state funds on deposit on the date of closing of the bank.

3. The two accounts, E. D. Pritchard, trustee, checking account, amounting to $4,274.20 and E. D. Pritchard, trustee, interest account, amounting to $46,732.80, not being state funds, are not secured.

4. The total of these two accounts, which includes interest on the interest account adjusted to the date of the closing of the bank, $51,007 is a valid and subsisting general unsecured claim, and the said claim is entitled to the present payment of a dividend thereon of 67 per cent. and to all future dividends which may be declared for the general creditors.

5. The plaintiff is entitled to a decree in accordance herewith.