## VERMONT MARBLE CO. v. NATIONAL SURETY CO. et al.

(Circuit Court of Appeals, Third Circuit. May 1, 1914.)

### No. 1818.

UNITED STATES (§ 67*)—PUBLIC IMPROVEMENTS—BOND—NOTICE TO CREDITORS —TIME—STATUTES—CONSTRUCTION.

Act Cong. Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1911, p. 1071), requires the execution of a bond by contractors for federal improvements, and declares that suit may be brought by the United States thereon at any time within six months after completion of the work, and if no suit is brought by the United States within six months then any person supplying the contractor with labor and materials may sue thereon within one year after the final performance and settlement of the contract, provided that, where suit is so instituted by a creditor, only one action shall be brought, and any creditor may file his claim and become a party within a year from the completion of the contract, provided that in such suits such personal notice to creditors as the court may order shall be given, and in addition notice shall be published in some newspaper of general circulation for at least three successive weeks, the last publication to be at least three months before the "time limited therefor." *Held*, that the provision prescribing the time for publication of such notice is not intended to change the period of limitation within which the claims of subcontractors, etc., may be asserted in a suit on the bond, but that the provision is directory only, so that, where claims of subcontractors were asserted by intervention within the six months specified, it was im-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

material that the notice was not published three months and three weeks prior to the expiration of the year within which suit might be instituted.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

In Error to the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

Action by J. A. Hollinger, in the name of the United States, but to his use, against the National Surety Company and the Illinois Surety Company on the bond of one Stannard, executed to the United States to secure performance of a contract for the construction of a post office, in which the Vermont Marble Company intervened. From a judgment in favor of defendants, said Hollinger and intervener bring error. Reversed.

J. Howard Reber, of Philadelphia, Pa., and Aaron V. Bower and R. W. Archbald, both of Scranton, Pa., for plaintiff in error.

J. A. Strite, of Chambersburg, and John E. Fox and John R. Geyer, both of Harrisburg, for plaintiff in error Hollinger.

A. C. Stamm and W. S. Snyder, both of Harrisburg, for defendants in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The writ of error in this case brings before us a suit in the court below, brought under an Act of Congress of February 24, 1905. This act provides that any persons entering into contract with the United States for the construction of any public building,

"shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract,"

and that the person or persons who have furnished such labor or materials, payment for which has not been made,

"shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said interveners. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, on application therefor, and furnishing affidavit to the Department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the circuit court of the United States in the district in which said contract was to be performed and executed, irrespective of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amount in controversy, * * * and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided,' that where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract' and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later: And provided further, that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. * * * Provided further, that in all suits instituted under the provisions of this Act such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the state or town where the contract is being performed, for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

The material and undisputed facts, as gathered from the statement of claim of the Vermont Marble Company, plaintiff in error, and from other portions of the record, are as follows:

On November 25, 1910, the defendant, Stannard, entered into a contract with the United States for the construction of a post office building at Chambersburg, Pa., and on November 30, 1910, gave bond in the sum of $30,000, with the other defendants, the National Surety Company and the Illinois Surety Company, as sureties, conditioned inter alia that he would promptly pay all persons supplying labor and materials in the prosecution of the said work. On March 10, 1911, the plaintiff, the Vermont Marble Company, entered into a contract with said Stannard to furnish and set in place in said building, for the sum of $1,900, all the interior marble. It is admitted that, in pursuance of said contract, plaintiff did so furnish and set up the marble contracted for, and that Stannard thereby was justly liable to the said plaintiff for the contract price therefor, and that, though requested, he has hitherto failed to pay the same. On June 14, 1912, Stannard having completely performed his contract with the government, a final settlement therefor was made, and the defendants, the surety companies as well as Stannard, thereupon became liable to the plaintiff to pay for the marble so furnished and set up.

No suit having been brought on the bond by the United States within six months from the date of the said final settlement by the contractor, to wit, June 14, 1912, a certified copy of the contract and bond was obtained, and an action of assumpsit brought thereon by one Hollinger, in the name of the United States, to his use, in the court below, against the defendants, on February 28, 1913, which was within one year from the completion of the said work under the contract. On March 22d, on petition of Hollinger, the court made an order that notice to creditors be given, by publication for three weeks in a newspaper published in said district, and in pursuance of this order publication of such notice was made in such newspaper for three successive weeks, the last publication being on April 9, 1913. On May 22, 1913, 23 days prior to the expiration of the year afore-said, the plaintiff, the Vermont Marble Company, applied for and was

given leave to intervene and be made a party to the proceedings, and thereupon filed its statement of claim.

To this claim, affidavits of defense were interposed by the defendants, the two surety companies, the defense set up being that, in order to meet the requirements of the statute under which the original suit was brought and the intervention of the marble company was made, the publication of notice to other creditors, of their right to intervene, should have been so made that the last publication would be at least three months before the time limited for the bringing of suit, and therefore, in this case should have been started not later than February 21, 1913, so that the last publication thereof should have been on or before March 14, 1913, three months before June 14, 1913, the time when the right to bring suit expired. That suit not having been brought nor publication made within the time required by the act, the same could not be maintained either by Hollinger, the original use plaintiff, or by the Vermont Marble Company and the other intervening plaintiffs. The court, on exceptions to these affidavits, sustained this contention, and the case having come on for trial, a special verdict embodying the facts was taken, on which judgment was subsequently entered for the defendants, and as to which the present writ of error was issued.

The merits of the plaintiff's claim are not disputed. The only defense is, that the original suit by Hollinger, in which the present plaintiff was intervener, was not brought in time; that is to say, was not brought soon enough after the expiration of the six months allowed to the government, to enable publication of notice to be made three months and three weeks prior to the expiration of the year within which such suit is required by the act to be instituted.

Unquestionably, there is a patent incongruity between the provisions of the act by which, after six months have elapsed from the completion of the contract without suit being brought thereon by the government, any materialman or sub-contractor is authorized to bring a suit in the name of the United States within one year from said completion of the work under the contract, and the last provision, that after such suit is pending, a notice shall be given creditors, by publication three months and three weeks before the expiration of the said period of one year.

The legislative intent to authorize any sub-contractor for labor, or material to institute a suit on the bond at any time within six months immediately preceding the expiration of one year from the completion of the contract, and authorizing any other creditor of like kind to intervene in such suit within the same period, is expressed as clearly as it is possible for language to express a legislative intent. Not only is there a clear expression of such legislative intent in the affirmative language of the act, but that intent is emphasized by the negative words "not later." Thus it is made plain beyond all cavil that such a suit or intervention was authorized during the period aforesaid, up to the last day before the expiration of one year from the completion of the contract, to wit, before June 14, 1913. If, as contended by the defendants, the provision directing publication to be made by the court.

or the plaintiff (it is not clear which) three months and three weeks before the expiration of this period of one year, is jurisdictional, the right not only of the original plaintiff to institute a suit, but that of all other such creditors to intervene, is defeated, although the original suit was brought nearly three months prior and the intervention of the plaintiff twenty-three days prior to the expiration of the period within which they were authorized to be instituted. The act read as a whole clearly indicates the legislative purpose to protect subcontractors for material and labor on government work, and this intent, gathered from the various provisions of the act itself, is as clearly confirmed in the title, which reads: "An act for the protection of persons furnishing materials and labor for the construction of public works."

Unquestionably, the limitation incorporated in the right to sue as conferred by the act, upon those furnishing labor and material to the contractor, that such suit or intervention must be instituted within one year from the completion of the contract, and the provision that only one suit can be brought, in which all other creditors may intervene, are limitations upon the right of action as conferred by the statute, and are jurisdictional. They are obviously intended for the benefit of such sureties on the bond as are the defendants in the present case; while the last provision of the statute, requiring notice to known creditors, and publication of notice for three months and three weeks prior to the expiration of the year within which suits are authorized to be brought, was just as obviously for the benefit of the creditors alone.

Under the limitations imposed upon the right of action above referred to, the sureties cannot be harassed after one year from the completion of the contract, by suits of sub-contractors on the bond. No matter how many creditors have failed to avail themselves of their right to sue within the period named, the liability of the surety on the bond cannot be enforced as to them after the expiration of this one year period. Plainly, then, the interest of these defendants was not to bring in other creditors, but, on the contrary, it was their interest to have the year expire without their having intervened  Yet, under the contention of defendants, that this provision for notice and publication is mandatory and jurisdictional and not simply directory  the anomalous result is reached, that the admittedly meritorious claim of this intervening creditor, asserted within the period prescribed by law and in a suit instituted within that period, must be defeated at the suggestion of the defendants, because a publication has not been made within the time limited therefor, the only object of such publication being to bring in other creditors who had not as yet intervened and whose demands presumably would not otherwise be asserted within the period limited therefor. Whatever may have been the intent of the Legislature as to this provision, it clearly was not to bring about a result so contradictory of the purpose of the act.

The position, however, is taken by the defendants, that this provision was intended to change the period of limitation within which the claims of sub-contractors might be asserted, from six months to about

two months and one week; which is the construction put upon the provision in question by the learned judge of the court below. This, of course, imputes to Congress an intention to abridge a substantive right conferred upon a meritorious class, by indirection, and to conceal the purpose to do so, in a provision which, on its face, purported to be for the further advantage and benefit of that class. It is consistent with our respect for the legislative department, that we should not impute an intent to do indirectly what might better and more easily have been done directly, or by inconsistent provisions in the same statute, to accomplish a result by implication which contradicts the plainly expressed purpose of the act. The long-established principles applicable to the construction and interpretation of statutes, require that we should seek to harmonize and not bring into conflict their various provisions. In this endeavor, we are much aided in the present case by the obvious and clearly expressed purpose of the act itself.

In this respect, we need not repeat what we have above said, except to emphasize the distinction observable in the language and the general character of the three provisions that we have been considering. The first two are necessarily limitations inherent in the right of action created by the act itself; the last, upon which the defendants rely, not only fails to express any such limitation, but on its face was intended for the benefit of the class in whose favor such right of action was created. by assuring, so far as possible, opportunity to the members of that class, to assert their claims against the sureties on the contractor's bond, as provided for in the act.

The general purpose of the act thus clearly recognized, is not to be obstructed or deprived of its efficacy by a subsidiary provision in the same act, which, though presumably intended to increase and not diminish the protection given to the class of persons described, nevertheless, if construed as mandatory and jurisdictional, and not merely directory, seriously impairs the right conferred upon that class, and deprives persons furnishing materials and labor for the construction of public works, of the full measure of protection previously accorded them in the body of the act.

It is to be observed that this provision as to publication of notice, is not an exception out of the general right accorded the persons for whose benefit the act was passed, but is a subsidiary provision, evidently meant to be consistent with the general intent of the act, and only by implication inconsistent therewith. Its main purpose was, that in addition to actual notice given to known creditors, unknown creditors might be reached by publication of notice. Nothing is said therein, directly, which takes away from a creditor the right of bringing his suit or intervention at any time within the period of six months before the expiration of the year from the completion of the contract. If such right is taken away, as is insisted, it is only by implication from the subsidiary requirement of making publication of notice three months and three weeks prior to the completion of the year.

The books are full of instances where such subsidiary provisions have been so interpreted, as not to destroy or derogate from the right which it was the main purpose of the act to create. As said by Mr.

Justice Field in the Circuit Court (Eureka Consolidated Mining Co. v. Richmond Mining Co. of Nevada, Fed Cas. No. 4,548, 4 Sawy. 302, 316):

> "Instances without number exist where the meaning of words in a statute has been enlarged or restricted and qualified to carry out the intent of the Legislature. The inquiry, where uncertainty exists, always is as to what the legislature intended, and, when that is ascertained, it controls. In a recent case before the Supreme Court of the United States, singing birds were held not to be live animals, within the meaning of a revenue act of Congress. * * * And in a previous case arising upon the construction of the Oregon donation act of Congress, the term, a single man, was held to include in its meaning an unmarried woman."

The necessity and duty of effectuating in its integrity the legislative intent, as gathered from the statute as a whole, and of preserving, so far as possible, the harmony of its more important provisions, is well illustrated by the judgment of the Supreme Court in the case of Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

To this conclusion we should be compelled, even if the implication contended for, viz., that the period of six months within which suits could be brought by sub-contractors was shortened to two months and one week, rested upon language less obscure than that of the proviso in question. We again quote the proviso:

> "Provided further, that in all suits instituted under the provisions of this act, such personal notice of the pendency of such suits, informing them of their right to intervene as the court shall order, shall be given to all known creditors, and in addition thereto, notice of publication in some newspaper * * * for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

The natural and grammatical antecedent of "therefor" is "the last publication," which of course would be absurd. If, grammatically, it can be referred to "suits instituted under the provisions of this act," then the last publication is required to be at least three months before— not the *expiration* of the time limited therefor, but before—the *time* limited therefor; that is, before the beginning of the period of six months within which the act authorizes a suit to be brought. This, then, would refer to the period of six months after the completion of the contract, within which suits on the bond could be brought only by the United States, but within which interventions could be made by the sub-contract creditors. The words, "before the time limited therefor," strictly construed, then, would mean, before the beginning of the time within which a suit could be brought by a sub-contract creditor; that is, the beginning of the six months prior to the expiration of the year from the completion of the contract.

These patent obscurities in the language of the proviso certainly add to the difficulty of construing the requirement of publication to be in any sense jurisdictional.

Moreover, referring to the legislative history of this proviso, we find that it was added in the committee having the bill in charge, and was reported to the House and adopted, and it is significant that there was no suggestion that the added provision directly or indirectly altered, or

was intended to alter, the important authority given in the original bill to sub-contractors to bring their suits within twelve months from the completion of the contract.

Under such circumstances, it is difficult to impute to Congress that it intended, by the use of such ambiguous language, to take away in large part the protection which it was the avowed purpose of the act to give to this meritorious class of creditors.

Construing these words as directory and not mandatory, or juris-dictional, we think the intent of the Legislature is subserved, and the true purpose of the provision in question maintained, so far as is not inconsistent with such legislative intent. Though the original suit was commenced well within the year subsequent to the completion of the contract, the judgment of the court below deprives them and all other intervening sub-contractors for labor and material furnished (and there were a number of such), of all remedy against the sureties on the bond, and practically relieves the sureties of all liability on their bond, given under the requirement of the act for the protection of that class of persons. We think there was error in such judgment, and that the requirement as to notice and publication was directory and not juris-dictional. Whatever rights were conferred upon creditors by the pro-viso in question, they are not for present determination. The judg-ment below would destroy every right of a creditor under the act, so far as this case is concerned, and the defendants are in the anomalous position of asserting the provision of the act intended for the benefit of such creditors, in order to extinguish their own liability to such credi-tors upon the bond given for their protection.

The judgment below must be reversed, and such judgment be en-tered upon the special verdict in the court below as is consistent with this opinion.