TRAVIS EQUIPMENT COMPANY, Inc.,
Plaintiff,

v.

D & L CONSTRUCTION CO. & ASSOCI-
ATES and Continental Casualty
Company, Defendants.

W. S. CONNER, d/b/a W. S. Conner Con-
struction Company, Plaintiff,

v.

D & L CONSTRUCTION CO. & ASSOCI-
ATES and Continental Casualty
Company, Defendants.

UNITED STATES of America, for the Use
and Benefit of MISSOURI–ILLINOIS
TRACTOR & EQUIPMENT CO., Inc.,
Plaintiff,

v.

D & L CONSTRUCTION CO. & ASSOCI-
ATES and Continental Casualty
Company, Defendants.

UNITED STATES of America, for the Use
and Benefit of ACME IRON WORKS,
COMPANY, Plaintiff,

v.

CONTINENTAL CASUALTY COM-
PANY, Defendant.

GENERAL ELECTRIC COMPANY,
Plaintiff,

v.

CONTINENTAL CASUALTY COM-
PANY, Defendant.

KOPPERS COMPANY, Inc., Plaintiff,

v.

CONTINENTAL CASUALTY COM-
PANY, Defendant (two cases).

WILLIAM J. ZICKEL COMPANY,
Plaintiff,

v.

CONTINENTAL CASUALTY COM-
PANY, Defendant.

Nos. 1897, 1898, 1900, 1968, 1807,
1814, 1887, 1974.

United States District Court
W. D. Missouri, S. D.
Nov. 21, 1963.

Claude T. Wood, Richland, Mo., and Owen & Purser, Austin, Tex., for Travis Equipment Co., Inc. and W. S. Conner d/b/a W. S. Conner Const. Co.

Rafter, Biersmith & Miller, Kansas City, Mo., for D & L Const. Co. & Associates.

Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., and Lincoln, Haseltine, Keet, Forehand & Springer, Springfield, Mo., for United States for use and benefit of Missouri-Illinois Tractor & Equipment Co., Inc.

Miller, Fairman, Sanford, Carr & Lowther, Springfield, Mo., for United States for use and benefit of Acme Iron Works, Co.

Blackmer, Swanson, Midgley, Jones & Eager, Kansas City, Mo., for General Elec. Co. and Koppers Co., Inc.

Rafter, Biersmith & Miller, and Watson, Ess, Marshall & Enggas, Kansas City, Mo., for Continental Cas. Co.

Rooney, Webbe & Davidson, St. Louis, Mo., for William J. Zickel Co.

JOHN W. OLIVER, District Judge.

### I

In our principal memorandum filed in this group of cases (reported as United States for Use and Benefit of Fine v. Travelers Indemnity Co., W.D.Mo.1963, 215 F.Supp. 455) we reserved any ruling on the limitations question. Following further pre-trial conferences, various motions and supporting briefs were filed relating to that question which we now rule.

In Case No. 1900, which we use as an example, plaintiff stated (page 10 of plaintiff's suggestions in opposition to defendant's motion for summary judgment) that factually "this suit was filed more than one year after the last of plaintiff's items were furnished, but within one year following the date upon which D & L Construction Company & Associates ceased to work on the project (Stipulation and Statement of Case, paragraph 19)". "Thus," plaintiff candidly continued, "if this Court holds that the limitation provisions of the Miller Act govern these actions, plaintiff has failed to institute suit within the time required". Plaintiff's statement of the legal question is a correct one.

The provisions of the bond and the provisions of the statute are in obvious conflict. The bond involved was executed August 18, 1959. Paragraph 4(b) of that bond provided:

"No suit or action shall be commenced hereunder by any claimant,
\* \* \*

"(b) After the expiration of one (1) year following the date on which Principal ceases work on the contract. Work under the Contract includes work on approved items of delayed completion."

Section 270b of Title 40, United States Code, as amended but shortly before the execution of the bond in its pertinent part provided that:

"(b) Every suit instituted under this section shall be brought \* \* \* in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere \* \* \*. [B]ut no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him."

For reasons unexplained and unknown, it is apparent that the terms inserted in the so-called Capehart bonds followed the language of the Miller Act to the extent of providing that no suit "shall be commenced after the expiration of one year", but that language changed the day from which the year was to be measured from "the day on which the last of the labor was performed or material was supplied by [the person who has furnished labor or material]", as provided by the Miller Act, to "the date on which Principal ceases work on the contract".

There can be no doubt but that if the Congress intended that the limitation stated in the Miller Act was to be considered applicable to bonds issued on Capehart projects that the provision inserted in the bond is most inconsistent with the declared Congressional intent. Senate Report No. 551 of the 86th Congress, 1st Session, 1959 (U.S.Code Congressional and Administrative News, 86th Cong. 1st Sess. page 1995) attached and incorporated a letter of February 24, 1959 of the Comptroller General of the United States in support of its recommendation of the 1959 amendment to the Miller Act. That letter set forth the complications that had resulted from the use of the "final settlement" language that had been incorporated into the Miller Act from the earlier Heard Act. It also pointed out the administrative burdens and practical uncertainties that resulted from the former requirement of the Miller Act which required the Comptroller General to conclusively fix the date of "final settlement".

More important, so far as substantive rights are concerned, the 1959 amendment to the Miller Act also changed the former Congressional policy that the one year period of limited right within which a suit could be instituted should run from a single date to a new policy which provided that each person who furnished labor and material would have a period of one year from the day on which *he* last performed labor or supplied material. In fact, the Comptroller General's letter pointed out that the single date was being rejected because "a single date is inequitable in that some claimants (those performing first) have a longer time within which to sue than others (those performing later). In the case of a large construction contract, this might mean years. To operate equitably upon all claimants, and to insure that there will be no extended delays in asserting the right provided in any instance, it appears that individual limitations of the same length should be made applicable to each."

■ The 1959 amendment to the Miller Act was designed to insure that claimants performing work first on a lengthy construction contract would be required to file their suits within one year after the day on which their last labor was performed or material was supplied. Only by the adoption of a multiple system of limitation periods would he who performed first have the same period within which to bring suit as he who performed last. But more important, the Congress determined that all claimants were to have only one year within which to bring their respective suits.

If the pattern of multiple periods is not for any reason applied and followed, and if the rejected single date pattern is applied and followed so that the one year period is said to commence to run only after the prime contractor has ceased work on the project, then it is perfectly obvious that a particular plaintiff who last performed labor or who last supplied material two years before his prime con-

tractor ceases to work on a lengthy contract would somehow be given a two year period within which to bring his suit rather than the one year period, as expressly intended in the 1959 amendment to the Miller Act.

And in our determination of Congressional intent, we must also take into account that one of the "beneficial results" that Congress intended would result from the proposed amendment was, as the Comptroller General's letter pointed out, that "[t]he supplier would know simply by consulting his records the precise time when the 1-year limitation began to run and (by adding 1 year) when his right to sue would expire". That Congressional intention must be disregarded if effect is given to the terms of the bond.

■ Should we hold the terms of the bond to be controllingly applicable, we would in practical effect hold the bonding company liable for particular claims that it would not have been liable for had the provisions of the bond followed the command of the 1959 amendment of the Miller Act.

In our principal memorandum we noted that we felt bound, not only by the precise holding of Continental Casualty Co. v. United States for Use and Benefit of Robertson Lumber Co., 8th Cir. 1962, 305 F.2d 794, cert. denied 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231, but that "we must also fairly, and without technical nicety, accept and apply its basic rationale to the cases now pending before us". (l. c. 460 of 215 F.Supp.)

We also there stated our considered view that "Robertson Lumber did not hold, nor does any application of its rationale require, that we approve all provisions that the Secretary of Defense may have seen fit, in the exercise of his assumed power, to write into bonds required by law". (l. c. 462 of 215 F.Supp.)

It is apparent from page 474 of 215 F.Supp. of our principal memorandum that we, unlike the Court of Appeals in Robertson Lumber, were required to reach the question of "whether the liability of the bonding companies involved in these cases can be said to be fixed by 'the terms of the bond as written' (p. 799 of 305 F.2d)". In ruling the questions relating to the extent of bond coverage we held that we would follow neither Robertson Lumber nor the expressed intention of the Congress "if we should attempt to construe the words in the bonds involved in this case as providing for a different substantive bond liability than that established by the Miller Act." (p. 474 of 215 F.Supp.) We also held that we could not believe that "the Congress, by a single clause in a single sentence, intended to change the well established law that the provisions of the Miller Act must be read into any and all payment and performance bonds required by that and other like legislation since 1894" (l. c. p. 473 of 215 F. Supp.) [1]

We read Robertson Lumber now as we read it when we wrote our principal opinion. We are still of our expressed view as stated on page 462 of 215 F.Supp. that the rationale of Robertson Lumber started from the basic premise that "Capehart housing is undoubtedly 'Government housing'". We then stated that Robertson Lumber "reasoned that, while the Miller Act does apply, at least in some respects, nevertheless, so far as the dual notice question was concerned, the Congress had given the Secretary of Defense power to require another notice in addition to that required by the Miller Act"; that "the additional notice was procedural, as distinguished from jurisdictional, and, as a procedural requirement it could not be said that the additional notice was either unreasonable or oppressive" (l. c. 462 of 215 F.Supp.)

---

1. G. L. Christian and Associates v. United States, Ct. of Cl.1963, 312 F.2d 418 and (on motion for rehearing) Ct. of Cl., 320 F.2d 345, has come to our attention since we wrote our principal memorandum. The basic rationale of both opinions is consistent with the basic rationale of our decision. And, we are, of course, gratified to see that the Court of Claims reads Robertson Lumber as we read it and as not being "opposed, in theory or holding" with that rationale.

After noting that we were bound by that specific holding as it related to the dual notice question, we added:

"We feel further bound to apply the rationale of that case as best we can to the other questions involved. Such an application must take into account the paramount proposition that Robertson Lumber is bottomed on the premise that government contracts are involved; that the Miller Act is generally applicable to all government contracts; *that there is, however, some sort of a difference between the procedural requirements and the jurisdictional provisions of the Miller Act*; and that power was in fact conferred by Congress upon the Secretary of Defense by the 1956 Capehart Act Amendment to change the procedural requirements of the Miller Act, if such an administrative change can be judicially said to be neither unreasonable nor oppressive." (Emphasis ours) (l. c. 462 of 215 F. Supp.)

On the face of it, an application of that rationale requires that we determine whether the language of Section 270b is to be classified under formula definitions, as a "procedural requirement" or a "jurisdictional requirement".[2]

There is a real and well established legal distinction between what is "procedural" and what is "substantive". Utilization of those words in a formula is but the long accepted way of pointing up the existence of a not uncomplicated but important legal concept. The impact of a particular classification under the formula, particularly as it relates to questions concerning statutes of limitation and statutes creating rights of action, is well established. See Kansas City, Missouri v. Federal Pacific Electric Co.,

8th Cir. 1962, 310 F.2d 271, 282, cert. denied 371 U.S. 912, 83 S.Ct. 256, 9 L. Ed.2d 171, cert. denied 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 415, for a recent example of the use and application of the principles here involved.

Robertson Lumber held that the dual notice provisions inserted in the bond were "procedural". Must or may the same thing be said in regard to the provision inserted in the bond relating to the time within which a suit on the statutory bond could be maintained? We think not.

■ We are convinced that the suits or actions on the bond here involved are actions based on a bond required by a law of the United States; that the law of the United States that requires such a bond is the Miller Act; that as a matter both of jurisdiction and of substantive law, the Miller Act expressly limited the life of the cause of action created by it to a period of one year "after the day on which the last of the labor was performed or material was supplied" as provided in Section 270b of Title 40, United States Code; and that the life of such a statutory cause of action cannot be extended by the insertion of a conflicting provision in the bond without express Congressional authority which we find is totally lacking. We look now to the cases.

The applicable leading case in the Eighth Circuit is United States to Use of Gibson Lumber Co. v. Boomer, 8th Cir., 1910, 183 F. 726. In that case it was held that the limitation period contained in a predecessor statute to the Miller Act "is not merely a limitation on the remedy but on the liability itself". In reiteration, Boomer held that:

"The time within which the suit must be brought operates as a limitation of the liability itself, and not

2. If the period within which a suit must be brought is determined to be a "jurisdictional requirement", it will not be necessary to determine whether it must be said that the change is either "unreasonable" or "oppressive". It might, however, be added in passing, that we believe that a change inserted in the bond, even if labeled a "procedural" change, would have the effect of enlarging the liability created by the statute and would, of necessity, have to be adjudicated to be at least an "unreasonable" change.

of the remedy alone. It is a condition attached to the right to sue at all. Time has been made of the essence of the right, and the right is lost if the time is disregarded. The liability and the remedy are created by the same statute, and the limitation of the remedy is therefore to be treated as a limitation of the right." (1. c. p. 730 of 183 F.)

United States Upon Relation and for Use and Benefit of Texas Portland Cement Co. v. McCord, 233 U.S. 157, 162, 34 S.Ct. 550, 58 L.Ed. 893 (1914), accepted the rationale of and expressly relied upon Boomer. The Supreme Court held in McCord that the statutory cause of action upon the bond " * * * did not exist before and is the creature of the statute". It held further that "[t]he act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute". (1. c. p. 162 of 233 U.S., at page 552 of 34 S.Ct., 58 L.Ed. 893.) And finally it held that:

> "The statute thus creates a new liability and gives a special remedy for it, and upon well settled principles the limitations upon such liability become a part of the right conferred and compliance with them is made essential to the assertion and benefit of the liability itself."

McCord and its rationale has been recognized, applied and followed by the Eighth Circuit numerous times. See for example, Morley Const. Co. v. Maryland Casualty Co., 8th Cir. 1936, 84 F.2d 522, 527; National Surety Corp. v. Wunderlich, 8th Cir. 1940, 111 F.2d 622, 625; and Kansas City, Missouri v. Federal Pacific Electric Co., supra, 310 F.2d at 282.[3]

Nor is there any fundamental inconsistency between holding, as we are bound to hold under Robertson Lumber,

that the notice provisions of the statute are "procedural" and holding that the provision of Section 270(b) that all actions here involved must be brought before the "expiration of one year after the day on which the last of the labor was performed or material was supplied", is a "jurisdictional or substantive" provision and therefore controlling.[4] The bond here involved was executed subsequent to the 1959 amendment to the Miller Act. As stated by Judge Collet in United States for Use and Benefit of Tobin Quarries, Inc. v. Glasscock, E.D. Mo.1939, 27 F.Supp. 534, 535, that amendment "must be read into the bond and its provisions treated as a part of the original agreement".

No plaintiff has any cause of action upon which the bond clause could be said to apply after the expiration of the year calculated upon the basis provided in Section 270b. Plaintiff's cause of action expired. Even as express agreement of the parties could not have given additional life to plaintiff's cause of action by attempting to extend the express period of limitation within which the Congress provided the statutory cause of action to be extinguished. See and compare Midstate Horticultural Co. v. Penna. Railroad Co., 320 U.S. 356, 64 S. Ct. 128, 88 L.Ed. 96 (1943).

That case, ruling the question as to when actions could be brought under the Interstate Commerce Act, noted that the decisions of the Supreme Court and those of inferior federal courts relating to the Interstate Commerce Act limitation period had fixed the pattern that the lapse of that statutory period "not only bars the remedy but destroys the liability".

We are required by the rationale of Midstate to take note of the similar pattern of Supreme Court and Eighth Circuit decisions relating to the Miller Act and rule that the limitation period es-

3. With commendable frankness, counsel for the plaintiff in one of these cases (No. 1897) states that "an examination of the cases indicates that the Miller Act Statute of Limitations is one which is mandatory and operates to extinguish the claim

as distinguished from one which merely prohibits suit within a certain length of time".

4. See footnote 1 above, and see particularly page 355 of 320 F.2d.

tablished by Section 270b may not be extended by the insertion of a different period in the bond.[5]

By its 1959 amendment to the Miller Act, Congress expressed its clear intention that all bonding companies and all suppliers be treated alike. It changed its long standing Congressional policy that a single date commence the running of the limitation period to a new pattern of multiple dates on which the time would commence to run for each particular plaintiff. "In the absence of explicit direction," as was stated in Midstate, "it cannot be assumed or inferred that Congress intended" to permit anyone to change its policy of multiple dates to a rejected policy of a single date for all plaintiffs. We find no such explicit Congressional direction in any of the applicable statutes of the United States. Nor do we think such a direction can be assumed or inferred from any source other than a statute of the United States. See and compare G. L. Christian and Associates v. United States, supra.

Because plaintiffs insist that Robertson Lumber commands a different result, we shall amplify our reasons why we do not think so. The pattern of the applicable cases has long noted that the rules of decision relating to notice provisions contained in the statutory bonds required by the Miller and the earlier acts are to be distinguished in cases involving the time limitation provisions of those acts.

Vermont Marble Co. v. National Surety, 3rd Cir. 1914, 213 F. 429, is a good illustration of the point. Vermont Marble held that "unquestionably, the limitation incorporated in the right to sue as conferred by the act [is a] limitation upon the right of action as conferred by the statute, and [is] jurisdictional". The bonding company argued that the provision for notice "is mandatory and juris-

dictional and not simply directory". Applying the distinction above noted, Judge Gray did not agree. He specifically held that "the requirement as to notice and publication was directory and not jurisdictional" (l. c. p. 436 at 213 F.).

In United States of America for Use and Benefit of Alexander Bryant Co. v. New York Steam Fitting Co., 235 U.S. 327, 35 S.Ct. 108, 59 L.Ed. 253 (1914), the Supreme Court expressly adopted the holding and rationale of Vermont Marble and noted that the latter case left "little else to be said". Counsel argued in Bryant that Texas Cement Co. (holding that the provision concerning the period of time within which an action could be brought was a jurisdictional provision) required that the court also hold the notice provision to be jurisdictional. The Supreme Court determined that such was not the implication of Texas Cement and that it was to be distinguished. Bryant held, as did Vermont Marble (and as did Robertson Lumber) that "the provision for notice * * * is not of the essence of jurisdiction over the case, nor a condition of the liability of the Surety Company" (l. c. p. 341 of 235 U.S., pp. 112–113 of 35 S.Ct., 59 L.Ed. 253.)

Fleisher Engineering & Construction Co. v. United States, for Use and Benefit of Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940), applied the rationale of both Texas Cement and Bryant (which were Heard Act cases) to the Miller Act. Fleisher also recognized that Bryant distinguished Texas Cement and reaffirmed the rule of decision that "a distinction should be drawn between the provision explicitly stating the condition precedent to the right to sue [referring to what is now Section 270b] and the provision as to the manner of serving notice".

We think that what we have said, perhaps in more than necessary detail, indicates that we are convinced that Rob-

---

**5.** Compare also United States for Use of Ackerman v. Holloway Co., D.C.New Mex.1954, 126 F.Supp. 347, and the cases cited therein as it and those cases relate to the question of the invalidity of a contract that would have the effect of altering the limitation provision of the Miller Act.

ertson Lumber is not contrary to our determination that the multiple limitation periods stated in the Miller Act are controlling in these cases. See also footnote 1, above.

For the reasons stated, we hold that Section 270b establishes multiple periods of limitation for each plaintiff in the various cases in which the question may be involved. Appropriate motions in a particular case designed to raise the question will be so ruled.

The general procedure that shall be followed by counsel in all pending cases is outlined in Section III of this Memorandum and Order.

## II

Cases Nos. 1807, 1814, 1897, and 1898 listed in the caption involve still another question. All of those cases were originally filed in the State court and removed to this Court.

■ The jurisdiction of this Court, on removal, is solely a derivative jurisdiction. As stated by Mr. Justice Brandeis in Minnesota v. United States, 305 U.S. 382, 389, 59 S.Ct. 292, 295–296, 83 L.Ed. 235 (1939), "where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although in a like suit originally brought in a federal court it would have had jurisdiction". See also Caraway v. Ford Motor Co., W.D.Mo.1956, 144 F. Supp. 295, for the most recent reported application of that established principle by a judge of this Court.

Minnesota v. United States also held that "if Congress did not grant permission to bring [the] proceeding [there involved] in a state court, the federal court was without jurisdiction upon its removal".

We did not have before us for decision in our principal memorandum "the question of whether a state court could legally be vested with jurisdiction over a cause of action based on a bond required by federal law by the act of the Secretary of Defense purporting to exercise the power, whatever it may be,

conferred on him by the 1956 Capehart Act Amendment" (l. c. 464 of 215 F. Supp.)

We must now reach that question in order to determine our jurisdiction over the cases removed from the State courts. In fact, we must on our motion raise that jurisdictional question in regard to all of the Capehart cases pending on our docket.

For the reasons stated in our principal memorandum and for those stated in this memorandum and order, we determine that the Congress has not by any legislation, including but not limited to the provisions of the Capehart Act, authorized the Secretary of Defense to vest any State court with jurisdiction over the causes of actions here involved.

■ On this general subject, we also indicate our substantial agreement with what was said and done by the Supreme Court of New Jersey in Gypsum Contractors, Inc. v. American Surety Co., 37 N.J. 315, 181 A.2d 174 (1962). We are, of course, in radical disagreement with the rationale and with the conflicting decision of the Supreme Court of New Mexico reported as Allsop Lumber Co. v. Continental Casualty Co., 385 P.2d 625 (1963). We note in passing that the possibility of the "judicial chaos" to which we alluded on page 474 of 215 F. Supp. is developing at a predictably rapid rate. Not only are several of the United States Courts of Appeals in open and complete conflict, but the first two of the potential fifty State appellate courts to decide the basic question of jurisdiction over the subject matter are also in open conflict. We cannot believe that the Congress intended that the rights of suppliers of labor and material and of the bonding companies that write the statutory bonds for the United States Government military housing projects were to be regulated by the chance geographical location of a particular military housing project. We believe Congress intended that its long established policy of exclusive federal jurisdiction was to continue and that the vagaries of unde-

veloped state law were to be thereby avoided.

We shall accordingly order that all removed cases be dismissed from our docket.

### III

This memorandum and order will be entered of record in each of the cases noted in the caption. We are advised, either by the discussion at earlier pre-trial conferences, or by pending motions in these cases, that either one or both of the questions discussed in both of the preceding sections of this memorandum and order are therein presently presented.

Our general information about the progress of all of the so-called Capehart cases that are still pending on our docket leads us to believe that one, or even perhaps both, of the questions we have ruled may also be presented under the undisputed factual situations involved in some of the other cases in which this memorandum and order is not being entered.

Certainly there can be no factual dispute about whether or not a particular case was filed originally in this Court or a State court. All removed cases will accordingly be dismissed for want of jurisdiction over the subject matter.

In all the cases in which the limitations period question may be involved, including but not limited to those cases that appear in the caption, there may or may not be a factual dispute as to the precise "day on which the last of the labor was performed or material was supplied by" a particular plaintiff in a particular case, all within the meaning of Section 270b.

Counsel for the defendants in all pending cases are therefore directed to examine each of their respective cases and to file appropriate motions to either dismiss the removed cases, or for summary judgment in the original cases in which the limitation period question is presented. In some cases, stipulations of fact have been filed that establish the critical dates; in other cases this has not been done, although the dates may be definitively established by answers filed to interrogatories, by requests for admission, or otherwise. In still other cases, nothing may have yet been done.

In any event, all motions that may be filed by the defendant in any particular case shall clearly allege and its supporting data shall show why a particular defendant contends that there is no genuine issue as to any material fact and why defendant is entitled to judgment as a matter of law, all as required by Rule 56 of the Rules of Civil Procedure.

The defendants in all of the pending cases shall file their appropriate motions with the Clerk at Springfield not later than November 30, 1963. Counsel for a particular defendant shall also advise counsel for a particular plaintiff that he intends to file a motion in a particular case as soon as he makes such a determination in order that plaintiff's counsel will be so advised at the earliest possible time.

Counsel for the respective plaintiffs in any pending case in which either of the questions discussed may be involved shall be prepared at the pre-trial conferences presently noticed for commencement on December 3, 1963, at Springfield to either (a) agree that the relevant facts concerning dates are not in dispute, or (b) to present evidentiary data to the contrary.

We again express our appreciation for the briefs and excellent cooperation of counsel in all the pending cases.