The UNITED STATES of America for the use and benefit of GENERAL ELECTRIC COMPANY

v.

SOUTHERN CONSTRUCTION COMPANY, Inc., Continental Casualty Company, Mojave Electric Company, Inc., Irving Sulmeyer, Trustee in Bankruptcy for Mojave Electric Co., Inc., National Union Indemnity Insurance Company.

Civ. A. No. 8186.

United States District Court
W. D. Louisiana,
Shreveport Division.

Dec. 31, 1964.

Michael H. Bagot, New Orleans, La., Jesse S. Guillot, New Orleans, La., for plaintiff.

A. Morgan Brian, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

This action is brought for the use and benefit of plaintiff, General Electric Company (GE), a furnisher of materials used in the construction of the Barksdale Air Force Base Defense Area's Nike-Hercules Facilities at Bellevue, Louisiana.

Defendant, Southern Construction Company (Southern), entered into a contract with the federal government's Corps of Engineers to construct the proposed facilities and posted the performance and payment bonds required by the Miller Act, 40 U.S.C.A. § 270a et seq., with Continental Casualty Company (Continental) as surety. Southern then subcontracted with Mojave Electric Company (Mojave) for performance of the electrical work on the project. During the course of the work on the project Mojave bought materials on open account from GE, and these materials were shipped to the site of the work by GE.

Mojave performed its work under the subcontract and received materials from GE until March 1960, when it defaulted and abandoned the subcontract work, leaving its account with GE unpaid. The last materials shipped by GE to Mojave, identified by invoice #5010, were ordered by Mojave October 22, 1959. Although the materials in invoice #5010 were shipped by the specialty manufacturer March 8, 1960, the invoice from GE for this item was dated March 14, 1960, and part of the material in this item was received at the jobsite March 21, 1960. The remainder was received at the jobsite March 30. None of the other materials furnished by GE to Mojave were received on the jobsite after March 13, 1960. GE sent by registered mail March 15, 1960, a "notice of claim" and an itemized statement of the Mojave

744

account, including invoice #5010, in the amount of $11,369.39.[1]

March 25, 1960, after Mojave's default, Southern and GE confirmed an agreement whereby Southern "would pick-up and re-order on its own purchase orders all materials which MOJAVE had already ordered but which had not yet been delivered and billed by GE, or necessary materials not yet even ordered by MOJAVE, and GE would sell and invoice these on open account directly to SOUTHERN."[2] Southern then entered into a new subcontract April 12, 1960, with Evans-Jones Electric, Inc. (Evans) for the completion of Mojave's abandoned work. That agreement provided, *inter alia,* that Evans would pay for certain items, including the materials on invoice #5010. GE consented to this agreement and wrote Evans April 18, 1960, that #5010 was being transferred to Evans' account. This transfer was made and Evans paid GE in full for #5010 May 31, 1960.[3]

40 U.S.C.A. § 270b(b) provides:

"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, *but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him.* The United States shall not be liable for the payment of any costs or expenses of any such suit." (Emphasis added.)

The time limit provided in this section for the institution of suit is a limitation on the liability itself, and not of the remedy alone. It is a condition precedent to the institution of the suit that it be brought within the one-year time limit provided. United States for Use of Soda v. Montgomery, 253 F.2d 509 (3 Cir. 1958); Travis Equipment Co. v. D. & L. Construction Co. & Associates, 224 F.Supp. 410 (W.D.Mo.1963); United States v. Seaboard Surety Co., 201 F. Supp. 630 (N.D.Texas 1961); United States for Use of M. A. Hartnett, Inc., v. Enterprise Engineering & Construction Co., 169 F.Supp. 131 (D.C.Del.1958).

This suit was filed on March 13, 1961.[4] and the issue for determination is whether it was filed within the one year limitation provided in § 270b(b). Since invoice #5010 represented the only material supplied after March 13, 1960, this suit was not filed timely unless the commencement date of the one year period within which to file suit was the date #5010 was charged[5] or delivered[6] to Mojave. We have previously held that the suit was not filed timely (229 F.Supp. 873), but in the present motions plaintiff seeks a reversal of that decision insofar

1. From this notice of claim was omitted inadvertently invoice #4674 dated March 4, 1960. This invoice was in the identical amount as invoice #5010—$1,977.74. The materials represented by invoice #4674 were received on the jobsite March 8, 1960.

The amount claimed in this suit was the same as the amount claimed in the notice of claim—$11,369.39. At the time of the suit invoice #5010 had been paid by Evans, but this amount still represents the total amount of the claim after invoice #4674 properly is added to the account.

2. Quoted from the Joint Stipulation of Facts filed August 2, 1963.

3. From April through September 1960 both Evans and Southern ordered materials from GE which were delivered at the jobsite. However, these materials were billed to their separate accounts with GE, and they were no part of the Mojave account.

4. Although the suit was filed with the Clerk at this time, by request of counsel for plaintiff service was withheld until further information was furnished the Clerk by plaintiff's counsel. This information was furnished by letter dated May 4, 1961, and service was accomplished shortly thereafter.

5. March 14, 1960.

6. March 21 and March 30, 1960.

as it applies to Southern and its surety, Continental.[7]

In our prior opinion we approved the analysis of 42 U.S.C.A. § 270b(b) propounded by counsel for defendant in which he concluded that this section, read in *pari materia* with the language of § 270b(a)[8] and the legislative history of the 1959 amendment to § 270b(b),[9] requires that a materialman's suit against the principal contractor and surety on the payment bond must be filed within one year from the date on which that same materialman last furnished the particular materials for which he claims payment in the suit.

Plaintiff strenuously objects to that holding and to the analysis of the statute we have adopted. It contends that the result of that reasoning would be to have an identical date for the commencement of three periods: (1) the 90 day period during which notice must be given to the prime contractor;[10] (2) the 90 day period which must expire before the suit can be brought against the prime con-tractor;[11] and (3) the one year period in which suit must be brought.[12] It further contends that under defendant's analysis and our prior decision the effect of the transferral of invoice #5010 to Evans' account and the payment of this account by Evans was to shorten the one year period within which to file suit after it had begun to run. GE concludes that, rather than applying identical dates to the 90 day periods and the one year period, defendant's argument results in the application of different commencement dates for these periods.

GE contends that after Mojave defaulted in March, 1960, it consulted its records and found the date of the last invoice (#5010) to be March 14. Assuming this date to be the commencement date of the 90 day periods and of the year within which to file suit, GE gave the March 15 notice to Southern of the existence of its claim against Mojave well within 90 days of the assumed commencement date.[13] GE's assumption of this commencement date is the basis for

7. Plaintiff does not contend there was any error in dismissing the suit as to National Union Indemnity Insurance Company. Mojave is bankrupt and has not contested the validity of plaintiff's claim against it.

8. 40 U.S.C.A. § 270b(a): "Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however*, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."

9. See 229 F.Supp. 873, 876 (1964).

10. See note 8 supra.

11. Ibid.

12. 40 U.S.C.A. § 270b(b).

13. Alternatively, GE contends the commencement date was March 21, 1960, the date the first shipment of the goods represented by invoice #5010 was received at the jobsite.

its conclusion that our prior decision applied a different starting date for the one year prescriptive period. However, the commencement date for the two 90 day periods is not at issue here. We, therefore, are not called upon to express an opinion as to the commencement date of either of these 90 day periods.[14] We need only decide whether in this case the one year prescriptive period commenced after March 13, 1960.

■ After a thorough examination of plaintiff's argument, we reaffirm our prior holding that this suit must be dismissed, because it was not brought within a year after GE supplied the last material for which claim is made. Since invoice #5010 had been paid at the time this suit was brought, it formed no part of GE's claim in this suit, and the delivery of the material represented in that invoice did not have the effect of extending beyond March 13, 1960, the commencement of the one year period within which to file suit.

Plaintiff contends that such a result will permit an unscrupulous prime contractor to trap an unwary materialman by paying, or by inducing a third person to pay, the last invoice on an open account just before the 90 day or one year period had run. Lest such a "device" be opened to the unscrupulous, GE suggests our prior decision be altered.

We do not think such a holding, limited to the facts before us, opens the door to collusion on the part of a prime contractor to defeat the claim of a materialman by paying or inducing a third person to pay the last invoice on an open account just before the expiration of the 90 day or one year period of limitation. We must point out here that no collusion on the part of either Southern, Continental or Evans is alleged or even intimated by the facts here presented.

The payment of invoice #5010 was not by Southern, and there is nothing to show that Southern in any way induced Evans to pay invoice #5010 in order to defeat plaintiff's claim against Southern. Moreover, since the transfer of the invoice from Mojave's account to Evans' account was with the consent of GE, there can be no contention of collusion in that respect.

In the Senate Judiciary Committee's favorable report on the 1959 amendment to 40 U.S.C.A. § 270b(b) it was said that under the amendment the supplier "would also know simply by consulting his records the precise time when the 1-year limitation began to run and (by adding 1 year) when his right to sue would expire." 2 U.S.Code Congressional & Administrative News (1959) at 1996. However, that report apparently assumed that the supplier's records would reflect accurately the last material supplied by him. In this case, GE continued to list invoice #5010 on the Mojave account even after it had been transferred by the consent of all parties to the account of Evans and after it had been paid by Evans. This error by GE was in no way due to the fault of Southern, Continental or Evans.

■ If GE's records had been kept accurately, at any time after April 18, 1960, it could have consulted these records and determined the date its right to sue expired. To extend this time limit to the date of invoice #5010 would be to extend plaintiff's one year prescriptive period because of its failure to delete that invoice from the Mojave account. We do not think plaintiff should be allowed to profit by its own mistake.

For these reasons we think the result reached in our prior decision, under the particular facts of this case, is correct. Therefore, plaintiff's motions are denied.

14. Counsel for both plaintiff and defendant concede that in the ordinary situation the starting date of the 90 day and one year periods would be identical, because ordinarily the creditor, instead of allowing a debtor or third person to pay off the last item on an open account, would apply any payment made on an open account to the first of the items on the account. Thus, no question would ordinarily be presented as to when the last of the material on the account was furnished. The facts before us constitute an exceptional, rather than an ordinary, situation.